743 So.2d 501 (1999)
Merle S. McDONALD, Appellant,
v.
STATE of Florida, Appellee.
No. 87,059.
Supreme Court of Florida.
July 1, 1999.
Rehearing Denied September 17, 1999.
*502 Richard N. Watts, St. Petersburg, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Candance M. Sabella, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Merle S. McDonald. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For reasons which follow, we affirm McDonald's conviction and sentence of death.

PROCEDURAL POSTURE
Appellant Merle McDonald and his codefendant, Robert Gordon, were tried together before a single jury during which they were convicted of first-degree murder for the killing of Dr. Louis A. Davidson on January 25, 1994. Following the penalty phase of the trial, the jury recommended death by a vote of nine to three as to each defendant. The trial court followed the jury's recommendation and sentenced both McDonald and Gordon to death.[1] As for McDonald, the trial court found four aggravating factors: (1) the murder was committed during the commission of a burglary/robbery;[2] (2) the murder was committed for pecuniary gain (based on a contract killing);[3] (3) the murder was heinous, atrocious, or cruel (HAC);[4] and (4) the murder was cold, calculated and premeditated (CCP).[5] The trial court found no statutory mitigating factors and three nonstatutory mitigators: (1) McDonald's good prison behavior; (2) McDonald's advanced age at the time he will be eligible for release; and (3) codefendant Denise Davidson's receipt of a life sentence.[6]

APPEAL
This appeal follows, in which appellant raises eight issues.[7] Initially we note that *503 several of McDonald's claims are identical to those claims raised by Gordon in his appeal, which were adversely decided by this Court. See Gordon. We have again considered those claims. However, because the evidence against McDonald and Gordon is the same and McDonald has not demonstrated any error in our analysis and conclusion as to those issues as raised by Gordon, we reject McDonald's claims for the same reasons asserted in Gordon.[8] McDonald's remaining claims warrant discussion.

HAC Jury Instruction
First, McDonald argues that the jury instruction given for the heinous, atrocious, or cruel (HAC) aggravator is overly broad and unconstitutionally vague. During the charge conference, counsel for McDonald objected to the standard HAC instruction. In response, the trial court asked counsel for alternative instructions. None were provided. However, both defense counsel asked the court to delete the definitions of the terms heinous, atrocious and cruel and to add a sentence stating: "In determining whether the murder of Dr. Louis Davidson was especially heinous, atrocious or cruel you may not consider injuries inflicted after the victim lost consciousness or died." Thus, the entire instruction as given to the jury read as follows:
Number three, the crime for which the defendant is to be sentenced was especially heinous, atrocious, or cruel. The kind of crime intended to be included as heinous, atrocious or cruel is one accompanied by additional acts that show that the crime was conscienceless or pitiless and was unnecessarily torturous to the victim. In determining whether the murder of Dr. Louis Davidson was especially heinous, atrocious or cruel you may not consider injuries inflicted after the victim lost consciousness or died.
The trial court complied with McDonald's request to delete the definition of the terms "heinous," "atrocious," and "cruel." Because McDonald agreed to the instruction actually given without providing any alternative instructions, we find he has *504 waived any claims he may have concerning the HAC instruction. "A party may not invite error and then be heard to complain of that error on appeal." Pope v. State, 441 So.2d 1073, 1076 (Fla.1983).

Prejudicial Statements by Prosecutor
As his seventh claim, McDonald argues that the prosecutor made several improper comments during closing argument in the penalty phase of the trial. First, McDonald contends the prosecutor's remarks implied that the defendants circumvented the American way of life by killing for what they wanted rather than working for it:
You know people in our society want to buy cars and clubs, the American way. The normal way is you get up in the morning and you go to work. And you punch a clock. You don't kill people for it. And that is what these men did. That is the value that they placed on human life.
Because McDonald and Gordon were Jamaican, McDonald asserts, the prosecutor improperly appealed to the emotions and fears of the jury to send a message to foreign citizens "not versed in the `American' way of life." Appellant's Initial Brief at 29.
McDonald also challenges the prosecutor's following remarks concerning the pain and suffering felt by the victim:
They subdued him and tied him. Why, ladies and gentlemen, did they have to do this to him? Why did they have to blindfold him, gag him, they had to gag him because he was crying out and they had to keep him quiet.
. . . .
There was more violence than that. They broke three of his ribs. Gagging on the mouth, look at the mouth injury? How tightly he was gagged. And why? Because he was crying out for mercy. He was crying out.
. . . .
He is lying there. He is tied up and he is down and what it happening, the water is filling up.... We all filled up our bath tub before, and what was Dr. Davidson having to do during that period of time? Listen to the water as it filled that bath tub, with him either in it or out of it, it doesn't matter. Listen to water as it filled up. And as he knew his life was going to be taken away. And under their scenario I sure hope they held him down, because if you think about it, if they didn't hold him down when he was trying to get up then what he did is he would have had to necessarily be hog tied like he was, hearing the water falling.
Think about the time frame when you go back in the jury room. Think about the time frame if [sic] would take. How long it would take to fill the tub up. Twenty minutes? How long they were in the house. It is a lot longer than it sounds. And if he is lying like this, ladies and gentlemen, and that water is filling up and they're not holding his head down. Is he drowning with the possibility of ever getting any air at all as that bath tub is filling up with water as he is drowning face down, not able to get up, not able to do anything but rock and roll. That is the method of this killing and the ordeal that this doctor went through. That is the aggravating circumstance of heinous, atrocious and cruel.
(Emphasis added.) McDonald contends that the comments on what the victim must have felt during the attack violated the "golden rule" because they forced the jury to place themselves in the shoes of the victim.
Unfortunately, defense counsel did not object to any of these comments during the State's closing remarks or move for a mistrial. Instead, counsel for McDonald filed a motion for new trial following the conclusion of the penalty phase proceeding which alleged improper comments by the prosecutor during closing arguments. At *505 a hearing held on August 4, 1995, the trial court denied the motion because no objection had been made at trial.
Because counsel failed to object to the alleged improper statements by the state attorney during closing argument, McDonald has not preserved this issue for review, and, therefore, his arguments are not cognizable on appeal. See Chandler v. State, 702 So.2d 186, 191 (Fla.1997), cert. denied, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998); Kilgore v. State, 688 So.2d 895, 898 (Fla.1996). The only exception to this procedural bar is where the prosecutor's comments constitute fundamental error. See Urbin v. State, 714 So.2d 411, 418 n. 8 (Fla.1998); Bonifay v. State, 680 So.2d 413, 418 n. 9 (Fla.1996). Fundamental error is defined as the type of error which "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Urbin, 714 So.2d at 418 n. 8 (quoting Kilgore, 688 So.2d at 898). Upon consideration of the comments made during closing remarks in this case, taken both individually and collectively, we find that allegedly improper comments do not rise to the level of fundamental error.[9]See Sochor v. State, 619 So.2d 285, 290 (Fla.1993).
While we find the prosecutor's remarks to be ill-advised, they do not rise to the level of fundamental error. See Chandler, 702 So.2d at 191 n. 5 (noting that prosecutor's thoughtless and petty comments toward defense counsel and defendant were not so prejudicial as to vitiate entire trial); Davis v. State, 604 So.2d 794, 797 (Fla. 1992) (holding that while comment by prosecutor during penalty phase closing argument that "it might not be a bad idea to look at [the knife] and think about what it would feel like if it went two inches into your neck" was improper, it was not so egregious as to undermine jury's recommendation). The jury was well aware of the facts of this case. They had heard testimony from the victim's fiancé, who discovered the body, and had viewed pictures of the victim and the condition of the bathroom in which he was found. Accordingly, we do not believe that the prosecutor's comments so tainted the jury's verdict so as to warrant a new penalty phase proceeding.[10]

*506 DNA Test Results and Statistical Comparisons

In claim eight, McDonald argues the trial court failed to determine the admissibility of the DNA test results and the basis of the statistical comparisons according to the standards enunciated in Frye v. United States, 293 F. 1013 (D.C.Cir.1923), and Brim v. State, 695 So.2d 268 (Fla. 1997), for novel scientific evidence.[11] However, defense counsel did not object to the admissibility of the DNA evidence or request a Frye hearing prior to the time the testimony was admitted in evidence. Accordingly, this issue has not been preserved for appellate review. See Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982) (holding specific legal ground for objection, exception, or motion must be raised before trial court to be cognizable on appeal). Moreover, in the absence of a proper objection, we find no error in the admission of this evidence. See Hadden v. State, 690 So.2d 573, 580 (Fla.1997) (holding that "it is only upon proper objection that the novel scientific evidence offered is unreliable that a trial court must make this determination. Unless the party against whom the evidence is being offered makes this specific objection, the trial court will not have committed error in admitting the evidence."); see also Archer v. State, 673 So.2d 17, 21 (Fla.1996) (rejecting claim where there was no ruling by trial court upon which to base a claim of error).

Proportionality
Finally, McDonald argues that his sentence of death is disproportionate because codefendant Denise Davidson received a life sentence. He further argues that the jury should have heard this evidence. These same arguments were rejected in Gordon. There, we found no error in Gordon's penalty phase proceeding concluding without Davidson's life sentence having been introduced to the jury. Gordon, 704 So.2d at 117 (quoting Gamble v. State, 659 So.2d 242, 245 (Fla.1995) (finding no error in trial court's refusal to postpone penalty phase proceedings until after codefendant was sentenced)). We also held that Davidson's life sentence did not warrant a reduction in Gordon's death sentence where the record indicated that Gordon and Davidson "were not equally culpable." Id. at 118. In Gordon we explained:
Next, Gordon contends that his death sentence is disproportionate since co-defendant Denise Davidson only received a life sentence. We disagree.
The trial judge found Davidson's life sentence to be mitigating, but accorded it only a modest amount of weight "in light of the vast differences in the aggravating and mitigating circumstances presented in her case" as opposed to Gordon's. The trial court was informed of the details of Denise Davidson's sentencing and the factors applied by Assistant State Attorney Shaw's sworn testimony and the State's supplemental sentencing memorandum, dated October 9, 1995. After convicting her of first-degree murder, the jury recommended that Davidson be sentenced to life imprisonment without the possibility of parole for twenty-five years. The trial judge followed the jury's advisory sentence and imposed the recommended life sentence. The trial judge found the two statutory aggravators that the capital felony was committed while Davidson was an accomplice in or engaged in the commission of or attempt to commit a burglary or robbery or both and CCP; the trial judge found the three statutory mitigators *507 of Davidson's age; lack of significant prior criminal history; and action under extreme duress or under the substantial domination of another person; and, finally, the trial judge found significant nonstatutory mitigation, including Davidson's family background; her community activities; the quality of being a caring parent; and her employment background. Our prior case law supports the trial judge's finding and sentence of death here.
Id. at 117. For these same reasons, we hold that McDonald's sentence of death was not disproportionate on the basis that Denise Davidson received a life sentence. While the Davidson sentence was mitigating, we find no error in the trial court's analysis.
After reviewing the record in this case, we find competent, substantial evidence supports the trial court's findings as to the four aggravating factors and the nonstatutory mitigating evidence. The evidence presented in aggravation was obviously substantial, especially in comparison to the minimal evidence of mitigating circumstances. Accordingly, we find McDonald's death sentence is proportionate to other capital cases where a sentence of death was imposed. See Guzman v. State, 721 So.2d 1155 (Fla.1998) (upholding sentence of death where four aggravating factors, including HAC, prior conviction of violent felony, murder committed during course of robbery, and murder committed to avoid arrest, outweighed no statutory mitigation and little nonstatutory mitigation), cert. denied, ___ U.S. ___, 119 S.Ct. 1583, 143 L.Ed.2d 677 (1999); Henyard v. State, 689 So.2d 239 (Fla.1996) (finding four aggravators, including HAC, prior conviction of violent felony, murder during commission of sexual battery and kidnaping, outweighed two statutory mitigators and minor nonstatutory mitigation); Marshall v. State, 604 So.2d 799 (Fla.1992) (upholding death sentence where four strong aggravators, including HAC, prior violent felony conviction, and murder during commission of burglary, outweighed minimal mitigation).

CONCLUSION
In summary, we affirm McDonald's conviction for first-degree murder and sentence of death.
It is so ordered.
HARDING, C.J., SHAW, ANSTEAD and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
WELLS, J., concurs as to sentence, and concurs in result only as to guilt.
NOTES
[1] This Court affirmed Gordon's conviction and sentence in Gordon v. State, 704 So.2d 107 (Fla.1997). The facts in this case, as presented to the jury through testimony and physical evidence, were fully set forth in that opinion. See id. at 108-10.
[2] See § 921.141(5)(d), Fla. Stat. (1995).
[3] See id. § 921.141(5)(f).
[4] See id. § 921.141(5)(h).
[5] See id. § 921.141(5)(i).
[6] This case involved a conspiracy among five people: Denise Davidson, the victim's ex-wife, Leo Cisneros, appellant, Robert Gordon, and Susan Shore. The facts indicate that Denise Davidson and Cisneros hired appellant and Gordon to kill Dr. Davidson. As of the time of this appeal, Cisneros was still at large and Davidson had received a life sentence for her involvement in the murderous plot.
[7] These claims include: (1) McDonald is entitled to a new trial because he was convicted by a jury from an all-white venire; (2) the trial court erred in denying McDonald's motion for judgment of acquittal; (3) the trial court erred in denying McDonald's request for a separate penalty phase jury from his codefendant and separate guilt and penalty phase juries; (4) McDonald's death sentence is disproportionate; (5) the trial court erred in finding the murder cold, calculated and premeditated; (6) the trial court erred in finding the murder heinous, atrocious or cruel; (7) the trial court erred in denying McDonald's motion for a new penalty phase based on improper prosecutorial comments during closing argument; and (8) the trial court erred in not holding Frye hearing on the admissibility of the DNA test results and the basis of statistical conclusions.
[8] First, McDonald claims that he was prejudiced by the fact he was convicted by a jury drawn from an all-white venire. In Gordon, we held that Gordon failed to refute the trial court's finding that jury members were randomly selected by computer and there was no evidence that blacks had been systematically excluded from the jury selection process. See 704 So.2d at 111-12. McDonald also failed to make the requisite showing; thus his claim likewise is without merit. Next, McDonald argues the trial court erred in denying his motion for judgment of acquittal. Gordon raised the same issue in his appeal, which we rejected on the basis that extensive circumstantial and direct evidence linked him to the murder and he failed to challenge the legal basis of the trial court's denial of his motion for judgment of acquittal. See id. at 113. McDonald's claim fails for the same reasons. Third, McDonald asserts the trial court erred in denying his request for a separate penalty phase jury from his codefendant and a different penalty phase jury. We found this claim to be without merit and procedurally barred since no objection or motion was filed by counsel for either defendant at the time the penalty phase commenced. See id. at 113-14. Fourth, McDonald argues that his sentence of death is disproportionate. Although McDonald raises the same arguments as Gordon in challenging proportionality, we will address this issue independently later in the opinion rather than summarily here. Finally, McDonald challenges the trial court's finding of both the cold, calculated and premeditated aggravator and the heinous, atrocious or cruel aggravator. The same challenges were raised in Gordon, wherein we held the evidence was sufficient to support both aggravating factors. See id. at 116-17. As for HAC, McDonald points to this Court's recent decision in Zakrzewski v. State, 717 So.2d 488 (Fla.1998), for the proposition that the HAC aggravator is inapplicable where the victim was unconscious at the time of the attack. However, McDonald's reliance on Zakrzewski is misplaced. In that case, we rejected HAC where the medical examiner testified that the victim may have been unconscious at the time she was brutally murdered. Although the medical examiner here opined that Dr. Davidson may have been rendered unconscious with the first blow to his head, the trial court found the evidence indicated otherwise. Accordingly, Zakrzewski is inapposite.
[9] However, because we are very concerned about improper arguments in death cases, we address several of the improprieties in the prosecutor's closing arguments. First, the evidence does not support the inference that the defendants gagged the victim because he "begged for mercy" or was "crying out." There were no witnesses to the events which took place inside the victim's apartment so it is not known what, if anything, Dr. Davidson may have cried out. While it is a reasonable inference to assume the victim was gagged to keep him quiet, the prosecutor's embellishment on what the victim may or may not have said, without factual support in the record, was an appeal to the emotions of the jurors. Such conduct is clearly prohibited. See Urbin, 714 So.2d at 421 (holding that prosecutor's imaginary script of what victim must have said at time of robbery constituted impermissible "subtle `golden rule' argument").

Further, the prosecutor's several references to the victim's knowledge of impending death as he listened to the water fill the bath tub came very close to asking the jury to place themselves in the shoes of the victim. Arguments asking the jury to place themselves in the victim's shoes are clearly prohibited because they violate the "golden rule" and improperly appeal to the fear and emotion of the jurors. See Garron v. State, 528 So.2d 353, 358, 359 n. 6 (Fla.1988) (holding statement asking jury to "[i]magine the anguish and the pain that [the victim] felt as she was shot in the chest" violated golden rule and was clearly prohibited); Bertolotti v. State, 476 So.2d 130 (Fla.1985) (holding that "golden rule" arguments are prohibited). Here, the record reveals that the prosecutor's remarks came during his discussion of the applicability of the HAC aggravator. Thus, the comments appear to be more of an attempt to describe the heinousness of the crime than a request to the jury to consider what the victim must have felt. Nevertheless, we find these remarks come perilously close to a golden rule violation. We admonish counsel to refrain from making any argument that asks the jury to consider what the victim must have felt.
[10] We find no merit to McDonald's argument relating to the prosecutor's comments about the "American way of life."
[11] To be admitted in evidence, novel scientific evidence must be "sufficiently established to have gained general acceptance in the particular field in which it belongs." Frye, 293 F. at 1014. DNA evidence, which is considered to be novel, consists of two distinct steps; the first determines whether two samples of DNA match, and the second determines the frequency in which a match would occur in the general population. See Brim, 695 So.2d at 269-70. Thus, both steps of the analysis must satisfy the Frye test before such evidence may be admitted at trial. See id. at 270.