789 So.2d 324 (2001)
Alvin Leroy MORTON, Appellant,
v.
STATE of Florida, Appellee.
No. SC95171.
Supreme Court of Florida.
June 28, 2001.
*327 James Marion Moorman, Public Defender, and Paul C. Helm, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Scott A. Browne, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
We have on appeal a trial court order imposing two death sentences upon Alvin LeRoy Morton following resentencing. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm the death sentences.
Morton was convicted of two counts of first-degree murder stemming from the 1992 deaths of fifty-five-year-old John Bowers and Bowers' seventy-five-year-old mother, Madeline Weisser. Morton was nineteen years old at the time of the murders. The facts established during the guilt phase of Morton's trial are set forth in this Court's opinion in Morton v. State, 689 So.2d 259, 260-61 (Fla.1997):
*328 In the late evening of January 26 or early morning of January 27, 1992, appellant Alvin LeRoy Morton, accompanied by Bobby Garner and Tim Kane, forcibly entered the home of John Bowers and his mother Madeline Weisser. Two other individuals, Chris Walker and Mike Rodkey, went with them to the house but did not enter. Morton carried a shotgun and one of the others possessed a "Rambo" style knife. They began looking around the living room for something to take when Bowers and Weisser entered the room from another area of the house. Morton ordered the two of them to get down on the floor, and they complied. Bowers agreed to give them whatever they wanted and pleaded for his life but Morton replied that Bowers would call the cops. When Bowers insisted that he would not, Morton retorted, "That's what they all say," and shot Bowers in the back of the neck, killing him. Morton also attempted to shoot Weisser, but the gun jammed. He then tried to stab her, but when the knife would not penetrate, Garner stepped on the knife and pushed it in. Weisser ultimately was stabbed eight times in the back of the neck and her spinal cord was severed. Before leaving the scene, either Garner or Morton cut off one of Bowers' pinky fingers. They later showed it to their friend Jeff Madden.
Acting on a tip, police and firefighters went to the victims' residence, where the mattresses had been set on fire, and discovered the bodies. Morton was later found hiding in the attic of his home. The murder weapons were discovered underneath Garner's mother's trailer. Morton later confessed to shooting Bowers and helping make the first cut on Weisser.
Morton was convicted on both counts of first-degree premeditated murder.
On appeal, this Court vacated the sentences of death, holding that the State improperly impeached its own witnesses with their prior inconsistent statements during the guilt and penalty phases of trial and then argued during closing argument that the jury should accept the content of the impeachment statements as true. See id. at 264. Accordingly, "[i]n view of the inherent confusion engendered by the repeated impeachment and the prosecutor's closing argument," we held that we could not conclude that the jury's recommendation of death was reliable. Id. at 265. Thus, we remanded the case to the trial court for a new penalty phase hearing before a new jury. See id.
At the conclusion of the new penalty phase proceedings, the jury recommended two death sentences for the murders of Bowers and Weisser, each by a vote of eleven to one. Finding that the aggravating circumstances outweighed the mitigating circumstances, the trial court imposed a death sentence for the murder of each victim.
With regard to the murder of Bowers, the trial court found the following aggravating circumstances, each of which the court assigned great weight: (1) the murder had been committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification ("CCP"); (2) the homicide was committed while Morton was engaged in the commission of, or an attempt to commit, a robbery or burglary or both; and (3) the homicide was committed for the dominant purpose of avoiding or preventing a lawful arrest. With regard to the murder of Weisser, the trial court found the following aggravating circumstances, which the court also gave great weight: (1) the homicide was committed in an especially heinous, atrocious, or cruel manner ("HAC"); (2) Morton was *329 previously convicted of another capital felony, i.e. murdering Bowers; (3) CCP; (4) the homicide was committed while Morton was engaged in the commission of, or an attempt to commit, a robbery or burglary or both; and (5) the homicide was committed for the dominant purpose of avoiding or preventing a lawful arrest.
As to mitigation, the trial court found and weighed the following statutory mitigators: (1) Morton's age of nineteen (little weight); and (2) Morton's lack of significant history of prior criminal activity (some weight). In nonstatutory mitigation, the trial court found: (1) Morton was a product of a dysfunctional family (little weight); (2) Morton had minimal physical contact with his mother during the first four weeks of his life (little weight); (3) Morton's family moved in and out of state on a regular basis, disrupting any stable home and social life (little weight); (4) Morton suffered from repeated physical and mental abuse committed by his alcoholic father up until Morton was eight years old (little weight); and (5) Morton voluntarily confessed and cooperated with the police (little weight).
On appeal, Morton presents the following four claims: (1) the State made numerous improper comments during closing argument in the penalty phase of the trial that entitle him to a new penalty phase; (2) the trial court failed to consider, find, and weigh mitigating evidence that Morton suffered from antisocial personality disorder; (3) the trial court erred in giving diminished weight to the mitigating circumstances of Morton's age and history as an abused child; and (4) the resentencing judge erred by adopting the original sentencing judge's findings of fact regarding the aggravating and mitigating circumstances. We address each issue in turn.

THE STATE'S CLOSING ARGUMENT
Morton claims that the State made five improper arguments during the penalty phase closing argument and that these improper arguments warrant a new penalty proceeding. In response, the State argues that Morton's challenges to the State's closing argument are procedurally barred because Morton failed to assert a contemporaneous objection to any of the allegedly improper comments during closing argument.
As a general rule, "failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review." Brooks v. State, 762 So.2d 879, 898 (Fla.2000); accord McDonald v. State, 743 So.2d 501, 505 (Fla.1999); Chandler v. State, 702 So.2d 186, 199 (Fla.1997). The exception to this general rule is where the unobjected-to comments rise to the level of fundamental error, which this Court has defined as "error that `reaches down into the validity of the trial itself to the extent that a verdict of guilty or jury recommendation of death could not have been obtained without the assistance of the alleged error.'" Brooks, 762 So.2d at 899 (quoting McDonald, 743 So.2d at 505); accord Chandler, 702 So.2d at 191. We have reviewed each of these allegedly improper arguments and do not find that these argumentseither individually or cumulativelyrise to the level of fundamental error.

ANTISOCIAL PERSONALITY DISORDER
Morton contends that the trial court erred in failing to find and weigh Morton's antisocial personality disorder as a mitigating circumstance. Both the United States Supreme Court and this Court have determined that a defendant's antisocial personality disorder is a valid mitigating *330 circumstance for trial courts to consider and weigh. See Eddings v. Oklahoma, 455 U.S. 104, 107, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Robinson v. State, 761 So.2d 269, 273 (Fla.1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1563, 146 L.Ed.2d 466 (2000); Snipes v. State, 733 So.2d 1000, 1003 (Fla.1999); Rutherford v. State, 727 So.2d 216, 224 (Fla.1998); Wuornos v. State, 676 So.2d 966, 968, 971 (Fla.1995).
We have repeatedly stated that "[w]henever a reasonable quantum of competent, uncontroverted evidence of mitigation has been presented, the trial court must find that the mitigating circumstance has been proved." Mahn v. State, 714 So.2d 391, 400-01 (Fla.1998) (quoting Spencer v. State, 645 So.2d 377, 385 (Fla. 1994)); see Eddings, 455 U.S. at 114-15, 102 S.Ct. 869 (stating that trial courts may determine the weight to be given to relevant mitigating evidence, "[b]ut they may not give it no weight by excluding such evidence from their consideration").
In the present case, three expert witnesses testified about Morton's mental health and concluded that Morton suffered from an antisocial personality disorder. Doctor Donald Delbeato, a clinical and forensic psychologist, diagnosed Morton as suffering from a mixed personality disorder, including antisocial personality disorder. Doctor Delbeato observed that Morton had a history of acting cruelly towards animals, setting fires, having disciplinary problems in school, and wetting the bed, all which Dr. Delbeato opined were significant signs that a person would develop antisocial behavior. Mimi Pisters, a mental health counselor, also concluded that Morton suffered from an antisocial personality disorder and opined that the disorder was a result of Morton's early childhood experiences, including: (1) Morton's lack of contact with his mother when he was hospitalized for several weeks following a premature birth; (2) the absence of religion in the home; (3) growing up in a family environment filled with fear and violence; (4) frequent moves by the family; (5) difficulties in school; (6) poor overall health; (7) lack of friendships; (8) his mother's failure to enforce house rules and provide discipline; and (9) his mother's guilt-driven need to give her children everything. Doctor Arturo Gonzalez, the State's expert psychologist, agreed with the other experts that the roots of Morton's antisocial personality disorder were in his childhood. During the penalty phase closing argument, defense counsel argued to the jury that Morton's antisocial personality disorder was "the most important" mitigating circumstance to be considered.
As we recently stated in Mansfield v. State, 758 So.2d 636, 646 (Fla.2000), "[a] trial court may reject a claim that a mitigating circumstance has been proven provided that the record contains competent substantial evidence to support the rejection." We have also explained that uncontroverted expert opinion testimony may be rejected where it is difficult to square with the other evidence in the case. See Foster v. State, 679 So.2d 747, 755 (Fla.1996); Wuornos v. State, 644 So.2d 1000, 1010 (Fla.1994) (citing Walls v. State, 641 So.2d 381, 390-91 & n. 8 (Fla.1994)). However, the trial court is required to discuss in its sentencing order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence. See Campbell v. State, 571 So.2d 415, 419 (Fla.1990). In this case, despite the expert testimony and defense counsel's closing argument, the trial court did not discuss this evidence or provide any reasoning in its sentencing order as to why it had rejected the experts' findings and conclusions. Having reviewed the record, we do not find a basis *331 for the trial court's rejection, without discussion, of this mitigating circumstance. Thus, we hold that the failure to consider this proposed mitigator of Morton's personality disorder was error.
The State, however, contends that the trial court's failure to find or mention Morton's antisocial personality disorder in its sentencing order is harmless error, especially after considering the substantial aggravating circumstances present in this case. See Wuornos, 644 So.2d at 1011 (holding trial court's failure to find and weigh defendant's alcoholism, difficult childhood, and some degree of nonstatutory impaired capacity and mental disturbances to be harmless error given the aggravating circumstances in the record); Wickham v. State, 593 So.2d 191, 194 (Fla. 1991) (holding that the trial court's failure to find and weigh the defendant's abusive childhood, alcoholism, and extensive history of hospitalization for mental disorders constituted harmless error due to the strong aggravating circumstances). We agree that in this case the failure to separately consider Morton's antisocial personality disorder amounts to harmless error.
We base our conclusion on two separate factors. First, the trial court in this double murder case found five aggravating circumstances with respect to the murder of Madeline Weisser and three aggravating circumstances with respect to the murder of John Bowers. Among the aggravating circumstances present in this case were CCP and HAC, which as we stated in Larkins v. State, 739 So.2d 90, 95 (Fla.1999), "are two of the most serious aggravators set out in the statutory sentencing scheme." In addition, this is a double murder. Thus, one of the additional aggravating circumstances in imposing the death sentence for the murder of seventy-five-year-old Madeline Weisser was the great weight afforded to the previous conviction of another capital felony; that is, the murder of her fifty-five-year-old son, which occurred immediately before Weisser's murder. Second, although the trial court did not find and weigh Morton's antisocial personality disorder as a mitigating circumstance, the trial court did consider and weigh several factors from Morton's childhood that likely contributed to Morton's antisocial behavior, including the facts that Morton had minimal physical contact with his mother following birth, Morton's family moved frequently, Morton did not have a stable home and social life, and Morton had a history of physical and mental abuse by his parents. We have reviewed the entire record in this case, including the evidence of the antisocial personality disorder, mindful that "the death penalty may be imposed only where specified aggravating circumstances outweigh all mitigating circumstances." Parker v. Dugger, 498 U.S. 308, 318, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). In light of the aggravating factors found in this double murder case, the jury's eleven-to-one death recommendation as to each murder and the fact that the trial judge found and weighed related mitigating evidence, we conclude that any omission from consideration in the sentencing order of the antisocial personality disorder as a separate mitigating circumstance was harmless beyond a reasonable doubt.

MITIGATING CIRCUMSTANCES PERTAINING TO MORTON'S AGE AND ABUSIVE CHILDHOOD
Under this claim, Morton argues that the trial court erred in assigning little weight to the mitigating circumstances pertaining to Morton's age of nineteen and his abusive childhood. As this Court has stated, the "weight assigned to a mitigating circumstance is within the trial court's discretion and subject to the abuse of discretion *332 standard." Elledge v. State, 706 So.2d 1340, 1347 (Fla.1997).
In Mahn, we explained that where a defendant is not a minor, in order for age to be accorded any significant weight, the defendant's age "must be linked with some other characteristic of the defendant or the crime such as immaturity." 714 So.2d at 400. Thus, in Mahn we found that the trial court abused its discretion in refusing to consider Mahn's age of nineteen given Mahn's "unrefuted, long-term substance abuse, chronic mental and emotional instability, and extreme passivity in the face of unremitting physical and mental abuse" that "provided the essential link between his youthful age and immaturity." Id. On the other hand, in Shellito v. State, 701 So.2d 837, 843 (Fla. 1997), we found no abuse of discretion where the trial court afforded age little weight. We explained that where the defendant is not a minor, no per se rule exists that pinpoints a particular age as an automatic mitigating factor that should be given substantial weight. See id. "Instead, the trial judge is to evaluate the defendant's age based on the evidence adduced at trial and at the sentencing hearing." Id.
In the present case, we do not find that the trial court abused its discretion in affording little weight to Morton's age as a mitigating circumstance. The evidence presented at resentencing demonstrated that Morton possessed mid-average intelligence with an I.Q. of 96. According to the expert testimony, there was no evidence of an extreme emotional disturbance or any evidence of mental illness, although there was evidence that Morton had an antisocial personality disorder. In addition, there was no evidence of drug or alcohol abuse on the part of Morton. The evidence also established that Morton was the group leader and the driving force behind the double murders. Thus, unlike the facts in Mahn, Morton's age was not linked to some other characteristic of the defendant or the crime that would have compelled the trial judge to afford Morton's age more than little weight as a mitigating factor.
Morton also challenges the fact that the trial court gave little weight to Morton's abusive childhood. The weight given to this mitigating circumstance is also within the trial court's discretion. See Shellito, 701 So.2d at 844. In his order, the resentencing judge gave Morton's family background and childhood abuse little weight because: (1) the abuse stopped when Morton was eight years old when his mother divorced her abusive husband and remarried, "thereby providing a substitute stable father figure for" Morton; (2) there had been no showing that these experiences diminished Morton's ability to "know right from wrong or not know the seriousness and grave consequences of his acts"; and (3) Morton's sister, Angela, had also been abused, including sexually abused, by the same alcoholic father, yet proceeded to live a normal and productive life. On this record, we cannot conclude that the trial court abused its discretion in the weight it assigned to the mitigating circumstances. See Shellito, 701 So.2d at 845; Williamson v. State, 681 So.2d 688, 698 (Fla.1996); Jones v. State, 648 So.2d 669, 680 (Fla. 1994).

SENTENCING ORDER
Morton next challenges the trial court's sentencing order on the ground that the resentencing judge improperly relied upon the original sentencing judge's sentencing order and essentially adopted verbatim the findings to support the aggravating and mitigating circumstances in this case.
We first note that Morton does not challenge the validity of the aggravating circumstances *333 found in this case nor does he argue that there was insufficient evidence presented to support the aggravators. Instead, Morton contends that in adopting the previous sentencing order, the resentencing court utilized facts that were not presented in the resentencing proceedings to support the finding of the CCP aggravating circumstance; to support the aggravating circumstance that the murder was committed during the commission of a robbery or burglary or both; and to support giving little weight to the mitigating circumstance that Morton voluntarily confessed and cooperated with police following the murders. Accordingly, Morton claims that this error entitles him to a new penalty phase trial because the adoption of the prior sentencing order indicates that the resentencing judge did not independently evaluate and weigh the aggravators and mitigators.
As we explained in Patton v. State, 784 So.2d 380, 388 (Fla.2000), the sentencing order is "a statutorily required personal evaluation by the trial judge of aggravating and mitigating factors" that forms the basis for a sentence of life or death. The sentencing order is the foundation for this Court's proportionality review, which may ultimately determine if a person lives or dies. Id. If the trial judge does not prepare his or her own sentencing order, then it becomes difficult for the Court to determine if the trial judge in fact independently engaged in the statutorily mandated weighing process.
In Patterson v. State, 513 So.2d 1257, 1261 (Fla.1987), we condemned the practice of a trial judge delegating to the State the responsibility of preparing the sentencing order. Section 921.141, Florida Statutes (Supp.1992),[1] requires a trial judge to independently weigh the aggravating and mitigating circumstances. See Patterson, 513 So.2d at 1261.
In Spencer v. State, 615 So.2d 688, 690-91 (Fla.1993), this Court stated the specific steps a trial court must follow in capital sentencing and we explained our rationale:
In Grossman [v. State, 525 So.2d 833 (Fla.1988)], we directed that written orders imposing the death sentence be prepared prior to the oral pronouncement of sentence. However, we did not perceive that our decision would be used in such a way that the trial judge would formulate his decision prior to giving the defendant an opportunity to be heard. We contemplated that the following procedure be used in sentencing phase proceedings. First, the trial judge should hold a hearing to: a) give the defendant, his counsel, and the State, an opportunity to be heard; b) afford, if appropriate, both the State and the defendant an opportunity to present additional evidence; c) allow both sides to comment on or rebut information in any presentence or medical report; and d) afford the defendant an opportunity to be heard in person. Second, after hearing the evidence and argument, the trial judge should then recess the proceeding to consider the appropriate sentence. If the judge determines that the death sentence should be imposed, then, in accordance with section 921.141, Florida Statutes (1983), the judge must set forth in writing the reasons for imposing the death sentence. Third, the trial judge should set a hearing to impose the sentence and contemporaneously file the sentencing order....

*334 It is the circuit judge who has the principal responsibility for determining whether a death sentence should be imposed. Capital proceedings are sensitive and emotional proceedings in which the trial judge plays an extremely critical role.
In preparing a sentencing order following a resentencing proceeding, a trial judge must abide by these same principles. Where a defendant's death sentence has been vacated and the case is remanded to the trial court to conduct a new penalty phase proceeding before a new jury, "[t]he resentencing should proceed de novo on all issues bearing on the proper sentence which the jury recommends be imposed. A prior sentence, vacated on appeal, is a nullity." Teffeteller v. State, 495 So.2d 744, 745 (Fla.1986); see Wike v. State, 698 So.2d 817, 821 (Fla. 1997) (citing Bonifay v. State, 680 So.2d 413 (Fla.1996)). In fact, as we have explained, a resentencing is a "completely new proceeding," and the trial court is under no obligation to make the same findings as those made in a prior sentencing proceeding. Phillips v. State, 705 So.2d 1320, 1322 (Fla.1997) (citing King v. Dugger, 555 So.2d 355, 358-59 (Fla.1990)).
We conclude that in this case, although the resentencing judge did utilize substantial portions of the original judge's sentencing order, there were also several significant differences between the two orders, demonstrating that the resentencing judge performed an independent weighing and personal evaluation of the evidence in this case. These differences included: (1) in the findings supporting the CCP aggravating circumstance, the resentencing judge found an additional fact not found by the original judgethat Morton had "worn gloves to avoid leaving fingerprints"; (2) the resentencing judge's findings concerning the mitigating factor of no significant history of prior criminal activity are different from the original sentencing judge's findings on the same factor; (3) as to the substantial impairment mitigating factor, the resentencing judge omitted the original sentencing judge's finding that Morton "was not disillusioned, suffered no drug abuse, nor inpatient psychiatric care"; (4) regarding the abused childhood mitigating circumstance, the resentencing judge gave a more complete explanation than the original sentencing judge for giving little weight to this circumstance; and (5) regarding the avoiding lawful arrest aggravator, the resentencing judge found that Morton had set fire to the victims' house in an effort to conceal the murders.
We thus reject Morton's argument that the death penalty was unlawfully imposed in this case and that the sentence must be reversed because the trial judge adopted a majority of the findings from the original sentencing judge's sentencing order. We do not find that Morton is entitled to a reversal because the facts presented by the State in the resentencing proceeding largely mirrored the evidence presented by the State during the first penalty phase, the facts that Morton points out as unsupported in the record are de minimis, and the resentencing order included differences indicating that the resentencing judge did fulfill his statutory responsibilities.
Although the trial court in this case did not abdicate its sentencing responsibility by relying on the prior trial judge's order, the reason for the requirement in the statute and in our case law is to ensure that the trial judge has carefully considered the contentions of both sides and has taken seriously his or her solemn obligation to independently evaluate the aggravating and mitigating circumstances in making this life or death decision. Thus, although *335 we decline to adopt a per se rule of reversal, for the future we caution resentencing judges against adopting a prior sentencing order or substantial parts thereof from the original sentencing judge.

PROPORTIONALITY
Finally, although Morton does not separately raise the issue of proportionality, this Court has an independent obligation to review each death case to determine whether death is the appropriate punishment. See Chandler, 702 So.2d at 201. We find that the death sentences imposed upon Morton are proportional compared to the death sentences imposed in other cases. See, e.g., Robinson v. State, 761 So.2d 269, 278 (Fla.1999); Spencer v. State, 691 So.2d 1062, 1063-65 (Fla.1996); Foster v. State, 654 So.2d 112, 114 (Fla.1995). Accordingly, we affirm Morton's sentences of death.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
WELLS, C.J., concurs in result only.
QUINCE, J., concurs in part and dissents in part with an opinion.
QUINCE, J., concurring in part and dissenting in part.
I am concerned by the trial court's failure to discuss, much less find as a mitigating circumstance, the experts' testimony concerning Morton's antisocial personality disorder and with the resentencing judge's almost verbatim use of the initial sentencing judge's sentencing order. The combination of these two factors requires us to vacate the sentence and remand to the trial judge to enter a new sentencing order after a full discussion of the evidence presented at sentencing.
This Court held in Campbell v. State, 571 So.2d 415 (Fla.1990), that a trial judge must, in the sentencing order, evaluate each mitigating circumstance offered by the defendant. Morton certainly offered as a mitigating circumstance his antisocial personality disorder, a factor that was supported by the testimony of three expert witnesses. While the trial judge did not necessarily have to find that this was a mitigating circumstance, he had to at the very least discuss this evidence and evaluate whether under the circumstances of this case it was mitigating. In his sentencing order the trial judge listed the nonstatutory factors argued by the defendant: (1) family background; (2) mental problems; (3) physical or mental abuse by parents; and (4) voluntary confession and cooperation. The trial judge discussed factors 1, 3 and 4 but did not discuss factor 2, the mental mitigation proposed. Although the trial judge touched on a mental health issue during his evaluation of the statutory mitigator of substantial impairment, that discussion does not include the testimony of the three experts who opined that Morton suffered from antisocial personality disorder.
As the majority acknowledges, the defense attorney argued this evidence as the most important mitigating circumstance for the jury and the judge to consider. Yet, it cannot be determined from the sentencing order that "the most important" evidence in mitigation was considered by the trial judge.
The same flaw, the failure to discuss the nonstatutory factor concerning the defendant's mental problems, appears in the original sentencing order. In that order, the same four factors were listed. The original sentencing judge discussed and evaluated Morton's claims of family background, physical or mental abuse, and his voluntary confession and cooperation. No *336 discussion or evaluation was made of Morton's proposed mental problems mitigator. It seems abundantly clear that this resentencing judge erroneously relied on the prior sentencing order and did not independently evaluate some of the evidence presented.
Under these circumstances, I would vacate the sentence of death and remand this case for resentencing before the trial judge, to include a determination as to whether or not the antisocial personality disorder was mitigating.
NOTES
[1] Section 921.141, Florida Statutes (2000), mandates the same independent weighing as its predecessor statute.