851 So.2d 650 (2003)
John BLACKWELDER, Appellant,
v.
STATE of Florida, Appellee.
No. SC01-2058.
Supreme Court of Florida.
July 3, 2003.
*651 Nancy A. Daniels, Public Defender, and W.C. McLain, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
Appellant, John Blackwelder, appeals a circuit court judgment sentencing him to death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

I. FACTS

Appellant pleaded guilty to the first-degree, premeditated murder of Raymond D. Wigley. At the time of the murder, Appellant and Wigley were inmates at the Columbia Correctional Institution. In May 2000, they engaged in a consensual sexual encounter. Although Blackwelder did not want a sexual relationship with Wigley, he knew that Wigley would badger him for sex, so Blackwelder decided to murder him. In preparation, Blackwelder positioned three pieces of cord in accessible locations around the bunk beds in his cell. Then he waited for an opportune moment.
That time came on May 6, 2000. On that day, Wigley went to Blackwelder's cell asking for sex. Blackwelder feigned agreement so that Wigley would consent to being tied to the bed. Wigley disrobed and permitted Blackwelder to tie his hands and feet to the bed and tie a hand towel over his mouth. Blackwelder then knelt on Wigley's mid-back, reached for one of the hidden cords, and strangled him. Wigley pleaded with Blackwelder "not to do this" and stated, "I'll do anything." It took ten minutes for Wigley to die. After killing Wigley, Blackwelder turned himself in to prison authorities.
Blackwelder pleaded guilty to first-degree murder. A jury was impaneled for the penalty phase, and it unanimously recommended a sentence of death. The trial court found four aggravating circumstances: (1) the murder was committed while under a sentence of imprisonment (great weight); (2) Blackwelder has been previously convicted of another capital offense or of a felony involving the use or threat of violence to some person (great weight); (3) the murder was especially heinous, atrocious, or cruel (great weight); and (4) the murder was committed in a cold and calculated and premeditated manner (great weight). The trial court also found two statutory mitigating factors (the crime was committed while the defendant was under the influence of extreme mental or emotional disturbance and he lacked the capacity to appreciate the criminality of his conduct or his ability to conform his conduct to the requirements of the law was substantially impaired) and two nonstatutory *652 mitigating factors (Blackwelder's relationship with his family and his history of sexual abuse as a child). The court gave slight weight to each mitigating circumstance and found that any aggravator, standing alone, would outweigh all the mitigation.
The court imposed a sentence of death. Blackwelder appeals. He raises four claims, which we address below.

II. EQUIVOCATING JURORS

Blackwelder first argues that the jury's recommendation of death was not the product of adversarial testing because he actively sought jurors with pro-death penalty views. During voir dire, two prospective jurors initially equivocated about the possibility of recommending a life sentence. Both ultimately concluded, however, that they could recommend a life sentence if the mitigating circumstances outweighed the aggravating ones. Both jurors were on the panel that recommended a sentence of death.
Blackwelder concedes that he failed to object to any potential jurors. Blackwelder had seven peremptory challenges remaining at the end of jury selection. He did not attempt to challenge either juror for cause. In fact, Blackwelder expressed that he was "happy" with the jury panel. We have held that defendants are required to challenge jurors they find questionable. Pentecost v. State, 545 So.2d 861, 863 n. 1 (Fla.1989) ("To show reversible error, a defendant must show that all peremptories had been exhausted and that an objectionable juror had to be accepted."). Because Blackwelder chose not to challenge either juror, he cannot now complain about their presence on the jury. To permit relief under this claim would allow a defendant to intentionally inject error into the penalty phase to hedge against a sentence of death. Cf. Armstrong v. State, 579 So.2d 734, 735 (Fla.1991) (affirming where the defendant claimed that the trial court committed fundamental error by charging the jury with an erroneous instruction the defendant had requested).
Even if Blackwelder had preserved this claim, we would deny it on the merits. As we have held, "[i]n a death penalty case, a juror is only unqualified based on his or her views of capital punishment, if he or she expresses an unyielding conviction and rigidity toward the death penalty." Barnhill v. State, 834 So.2d 836, 844 (Fla.2002). Here, Blackwelder complains that two jurors initially equivocated about the possibility of recommending a life sentence. Neither juror, however, held an unyielding conviction toward the death penalty. Both ultimately agreed they could recommend life if the mitigators outweighed the aggravators.

III. SENTENCING ORDER

Blackwelder next argues that the trial court abdicated its responsibility because the sentencing order copied almost verbatim the State's sentencing memorandum. At the end of the penalty phase, the trial court requested that each side prepare a proposed sentencing order. The State suggested that preparing a proposed order was a "bad idea" and recommended that each side prepare a sentencing memorandum. Both sides prepared memoranda and the trial court copied substantial portions of the State's memorandum in its sentencing order.
This issue, too, is procedurally barred because Blackwelder failed to object. See Ray v. State, 755 So.2d 604, 611 (Fla.2000) (holding that although the trial court may have erred in relying on a sentencing order the State prepared, the defendant failed to preserve the issue).
*653 This argument also fails on the merits. It is true that "this Court has held that the trial court may not request that parties submit proposed orders and adopt one of the proposals verbatim without a showing that the trial court independently weighed the aggravating and mitigating circumstances." Valle v. State, 778 So.2d 960, 965 (Fla.2001) (citing Spencer v. State, 615 So.2d 688, 690-91 (Fla.1993)). In this case, however, the differences between the State's memorandum and the sentencing order demonstrate that the trial judge independently weighed the aggravating and mitigating circumstances. The sentencing order found three mitigating circumstances, while the State's memorandum argued that no mitigation applied. The judge also found that the prior violent felony aggravator was supported by a prior capital felony and seven other felonies involving violence or the threat of violence  not ten, as the State argued. These differences indicate that the trial court did not simply rubber-stamp the State's sentencing memorandum, but independently weighed the aggravating and mitigating factors and personally evaluated the case. Cf. Morton v. Florida, 789 So.2d 324, 334 (Fla.2001) (if a resentencing judge copies verbatim the prior sentencing order or substantial portions thereof, reversal is not necessary if it is evident from the record that the resentencing judge performed an independent weighing and personal evaluation of the case).
However, we remind judges of their duty to independently weigh aggravating and mitigating circumstances. A sentencing order should reflect the trial judge's independent judgment about the existence of aggravating and mitigating factors and the weight each should receive. When a judge simply copies verbatim the State's submission, whether it is designated a "sentencing order" or a "sentencing memorandum," the judge abdicates that responsibility. Moreover, such verbatim copying renders more difficult, if not impossible, our own duty to determine whether the trial court fulfilled its sentencing responsibility. Therefore, we warn trial judges that they should avoid copying verbatim a State's sentencing memorandum. While we recognize the efficiency modern computer technology affords in drafting orders, efficiency cannot substitute for independent consideration of the evidence.

IV. PRIOR VIOLENT FELONY AGGRAVATOR

Blackwelder next claims that the prior violent felony aggravator should be stricken because it was based, in part, on six felony convictions that are not per se crimes of violence. Even if he is correct, however (which we do not address), Blackwelder also had been convicted of capital sexual battery, which is per se a crime of violence. In addition, Blackwelder had been convicted of attempted capital sexual battery. Therefore, the prior violent felony aggravator is supported by competent, substantial evidence.

V. RING ISSUES

Finally, Blackwelder argues that Florida's capital sentencing scheme is unconstitutional in light of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court, considering the effect of Ring, denied relief in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), which, like Blackwelder's case, involved a prior-felony-conviction aggravator. Ring rests on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *654 which held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348. We have previously rejected claims under Apprendi and Ring in cases involving the prior-felony-conviction aggravator. See Lugo v. State, 845 So.2d 74, 119 n. 79 (Fla.2003) (noting rejection of Apprendi/Ring claims in postconviction appeals, unanimous guilty verdict on other felonies, and "existence of prior violent felonies"); Doorbal v. State, 837 So.2d 940, 963 (Fla. 2003) (stating that prior violent felony aggravator based on contemporaneous crimes charged by indictment and on which defendant was found guilty by unanimous jury "clearly satisfies the mandates of the United States and Florida Constitutions").
Blackwelder argues specifically that aggravating circumstances must be alleged in the indictment, submitted to the jury, and individually found by a unanimous jury verdict. We recently rejected this same argument. Porter v. Crosby, 840 So.2d 981 (Fla.2003).

VI. SUFFICIENCY OF THE EVIDENCE

Although Appellant does not contest the sufficiency of the evidence for his conviction of first-degree murder, we must nevertheless independently determine whether the evidence is sufficient. See Brown v. State, 721 So.2d 274, 277 (Fla. 1998); Fla. R.App. P. 9.140(h). Based on our review, we find that there is competent, substantial evidence to support the verdict. We have outlined that evidence in detail above.

VII. PROPORTIONALITY

Although Blackwelder has not contested the proportionality of his sentence, we have an independent duty to determine whether the sentence of death was proportional  that is, that such a sentence was appropriate in light of the sentences imposed under similar circumstances. See Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990). We find that Blackwelder's sentence is proportional to other cases where a death sentence has been imposed. See Lawrence v. State, 698 So.2d 1219 (Fla. 1997) (death sentence proportional where aggravators of especially heinous, atrocious, and cruel (HAC), cold, calculated, and premeditated (CCP), and under sentence of imprisonment weighed against five nonstatutory mitigators  a learning disability, a low IQ, a deprived childhood, the influence of alcohol, and a lack of a violent history).

VIII. CONCLUSION

For the reasons stated, we approve the trial court's sentencing order and affirm Blackwelder's sentence of death.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
ANSTEAD, C.J., concurring in part and dissenting in part.
For the reasons I expressed in my opinion in Duest v. State, No. SC00-2366, ___ So.2d ____, 2003 WL 21467248 (Fla. June 26, 2003), I cannot agree with the majority's discussion of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). I do not view the mere existence of a prior violent felony aggravating circumstance as a valid means of rejecting a Ring claim, especially where the trial judge found three other aggravating circumstances *655 and assigned them each "great weight" in the decision to impose the death sentence. Under these circumstances, it is apparent that the essential holding of Ring that a death sentence cannot be predicated upon findings made by the trial judge alone, was violated.