946 So.2d 960 (2006)
Lynford BLACKWOOD, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
Lynford Blackwood, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC03-1553, SC04-945.
Supreme Court of Florida.
October 12, 2006.
Rehearing Denied January 8, 2007.
*963 Todd G. Scher, Law Office of Todd G. Scher, P.L., Miami, FL, for Appellant/Cross-Appellee.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Debra Rescigno and Melanie Dale Surber, Assistant Attorneys General, West Palm Beach, FL, for Appellee/Cross-Appellant.
PER CURIAM.
Lynford Blackwood appeals an order of the circuit court denying the part of his motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851 which requested a new trial. The State of Florida cross-appeals the part of the order granting Blackwood a new sentencing proceeding. Blackwood also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the decision of the circuit court granting in part and denying in part the motion for postconviction relief, and we deny habeas relief.

*964 FACTUAL AND PROCEDURAL HISTORY

Lynford Blackwood was charged with the first-degree murder of Carolyn Thomas-Tynes. The two had dated on and off for approximately ten years, but the relationship ended in October 1994. The victim had since begun dating another man and was six weeks pregnant when Blackwood visited her to return some personal items on January 6, 1995. The two engaged in consensual sex, but a heated argument ensued. The victim was discovered with a folded washcloth and a bar of soap lodged in the back of her throat. She also appeared to have been strangled, both manually and with speaker wire. Forensic evidence indicated that the victim struggled during several minutes of asphyxiation. Blackwood admitted having strangled the victim but stated his belief that she was alive when he left and reiterated that he did not intend to kill her. See Blackwood v. State, 777 So.2d 399, 403 (Fla.2000).
After the withdrawal of prior counsel, the trial court appointed Robert Ullman as Blackwood's counsel in June 1996. Ullman represented Blackwood in both the trial and penalty phases.[1] The jury found Blackwood guilty of first-degree murder, and the penalty phase commenced on January 23, 1997, approximately seven weeks after trial. During the penalty phase, the State presented the medical examiner, who testified as to the cause and nature of the death, and the victim's mother, who presented victim impact testimony. Blackwood presented eleven witnesses consisting of friends and family, as well as a detention officer who testified that Blackwood demonstrated good behavior while incarcerated and had become an inmate trustee. The jury recommended the death sentence by a vote of nine to three. Id. at 403.
Ullman contacted Dr. Trudy Block-Garfield, a clinical psychologist, on February 25, 1997, to elicit her aid in investigating mitigating circumstances. Block-Garfield had evaluated Blackwood on two prior occasions for competency. She had been unable to determine competency at the first evaluation due to Blackwood's severely depressed state but found him competent to stand trial after the second evaluation, during which she performed a psychosocial evaluation and an initial screening test for neurological deficits. The tests indicated a low IQ range and possible neurological deficits, but due to Blackwood's continuing depression, she could not definitively determine whether Blackwood suffered neurological impairment. Block-Garfield evaluated Blackwood a third time in March 1997 for evidence of mitigating circumstances. In addition to her own prior competency reports, she consulted a transcript of Blackwood's confession, the medical examiner's deposition and autopsy reports, and police reports. She did not administer any clinical tests for determining mental health mitigation during this third evaluation. She found that Blackwood had no prior criminal history and that he had been under the influence of a mental or emotional disturbance at the time of the crime but that it did not rise to the level of being extreme. The trial court held a Spencer hearing[2] on April 11, 1997, at which *965 Blackwood presented testimony from Block-Garfield. 777 So.2d at 404-05.
Based at least in part upon Block-Garfield's testimony, the trial court ultimately found Blackwood's lack of a significant history of prior criminal activity as a statutory mitigating circumstance, and gave that mitigating circumstance significant weight. The court also found eight nonstatutory mitigating circumstances: (1) Blackwood suffered from a mental or emotional disturbance that was not extreme (given moderate weight); (2) he had a good capacity for rehabilitation (given very little weight); (3) he had cooperated with police (given moderate weight); (4) the murder resulted from a lover's quarrel (given no specific weight, but the court considered this factor to the extent that the killing was born out of a prior relationship and was fueled by passion); (5) Blackwood's remorse (given some weight); (6) Blackwood is a good parent (given some weight); (7) his employment record (given some weight); and (8) his low intelligence level (given some weight). However, the trial court also found one aggravating circumstance in that the murder was heinous, atrocious, or cruel (HAC). See § 921.141(5)(h), Fla. Stat. (1995).
The court accepted the recommendation of the jury and imposed the death sentence. On direct appeal, this Court affirmed the conviction and death sentence by a vote of four to three. Id. at 413.[3] The United States Supreme Court denied certiorari review. Blackwood v. Florida, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001). Blackwood filed an initial motion for postconviction relief in October 2002. The trial court struck the motion for failure to comply with the requirements of rule 3.851. An amended motion was filed on December 2, 2002, raising five issues.[4] After summarily denying three of the claims and holding an evidentiary hearing on the other two claims, the trial court concluded that Blackwood was entitled to a new sentencing proceeding. It denied relief on all other claims. This appeal and cross-appeal followed.

MOTION FOR POSTCONVICTION RELIEF
Subsequent to a Huff[5] hearing, the trial court summarily denied Blackwood's claim *966 of ineffective assistance of counsel during the guilt phase. The trial court stated Blackwood failed to show any nexus between his allegations of counsel's substance abuse and counsel's deficient performance. In addition, the trial court said that Blackwood failed to demonstrate any legal basis upon which counsel could have successfully challenged the jurors and that he failed to show how counsel's cross-examination of the lead detective was deficient or prejudicial. Relief was also denied because Blackwood failed to show prejudice because counsel's failure to object to evidence solicited during the state's examination of one of the police detectives was harmless error. The court found that the claims of inadequate penalty phase preparation and inadequate assistance of a mental health expert were sufficiently pled and ordered an evidentiary hearing on these claims.
After the evidentiary hearing, the court stated, "The dispositive issue presented by [these claims] is whether Mr. Blackwood was deprived of the effective assistance of counsel as a result of his counsel's failure to investigate and present any mental health mitigation at the penalty phase proceeding." The court found that Blackwood had been deprived of the effective assistance of counsel and held that he was entitled to receive a new penalty phase. Blackwood appeals the summary denial of his claim of ineffective assistance of counsel during the guilt phase of the trial, and the State cross-appeals the granting of a new penalty phase.[6]

ANALYSIS

Ineffective Assistance of Counsel During the Guilt Phase
Blackwood argues his trial counsel was ineffective during the guilt phase of his trial and that the trial court erred in summarily denying relief on this claim. Claims of ineffective assistance of counsel must be analyzed under the standard espoused in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to be entitled to relief, a defendant must successfully address two components:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citing Strickland). Blackwood contends that the trial court erred in summarily denying his postconviction claim of ineffectiveness of counsel during the guilt phase of the trial. He contends that he made specific fact-based allegations, unrefuted by the record, that demonstrate the ineffective assistance of trial counsel Robert Ullman in five areas: racial bias; substance abuse; jury selection; cross-examination; and failure to object.
"To uphold the trial court's summary denial of claims raised in a 3.850 *967 motion, the claims must be either facially invalid or conclusively refuted by the record." Peede v. State, 748 So.2d 253, 257 (Fla.1999). Each of Blackwood's claims alleging ineffective assistance of counsel during the guilt phase is either facially invalid or refuted by the record. In addition, Blackwood failed to preserve the issue of racial bias and failed to demonstrate that he is entitled to relief on the four remaining subissues raised under the ineffectiveness claim.

Racial Bias
Blackwood contends the postconviction motion sets forth an unrefuted allegation of racial bias by trial counsel. The motion alleges that during an incident unrelated to this case a police officer heard trial counsel use a racial epithet. Blackwood argues there should be an evidentiary hearing to determine whether trial counsel's alleged racist views affected his performance. We note that Blackwood's postconviction motion expressly enumerated four issues regarding ineffective assistance of counsel during the guilt phase. The allegation that counsel made a racist remark was included, without elaboration, as a part of his claim concerning counsel's substance abuse.[7] No argument was made that attempted to link this alleged racist attitude with any specific allegations of ineffectiveness by counsel.
On appeal, Blackwood presents "racial bias" as a separate and distinct fifth issue. Blackwood failed to present the trial court with an opportunity to rule upon the specific arguments now raised and the claim is therefore procedurally barred. "[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below." Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982).

Trial Counsel's Substance Abuse
Blackwood next argues that an evidentiary hearing is needed to determine if the alleged trial deficiencies may be attributed to counsel's substance abuse problem. Blackwood points out specific allegations of counsel's drug abuse, including counsel's drug overdose prior to his representation of Blackwood, his arrest after representation for driving under the influence, and his eventual conviction of a federal drug felony. Blackwood also relies on counsel's denial that he was experiencing any personal problems at the time of trial. These allegations, though tragic, are insufficient because the allegations have not been linked to any specific deficient performance by counsel in this case.
Blackwood fails to allege that trial counsel was under the influence of drugs or alcohol to the extent of impairment during his trial or representation. In fact, Blackwood fails to allege that counsel was even under the influence during the representation.[8] Even if Blackwood had alleged specific facts suggesting that trial counsel was impaired during the representation, he would still need to demonstrate both that counsel's performance fell below constitutional standards as a consequence of the abuse and that Blackwood suffered *968 prejudice therefrom. At best, Blackwood makes only a conclusory allegation that counsel's experience with substance abuse may have affected his representation. He fails to demonstrate any connection between the abuse and the alleged deficient performance in the remaining claims. Therefore, the claim is facially insufficient. "The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant." LeCroy v. Dugger, 727 So.2d 236, 239 (Fla.1998) (quoting Kennedy v. State, 547 So.2d 912, 913 (Fla.1989)).

Deficient Jury Selection
Blackwood contends trial counsel rendered grossly ineffective assistance during the voir dire process with respect to three individual members of the venire. Blackwood argues that counsel should have used a cause challenge against prospective juror Pitz, rather than a peremptory challenge. He argues a challenge for cause would have been appropriate because juror Pitz said he would always vote for a sentence of death for anyone convicted of first-degree murder. Blackwood further contends that counsel exhausted his peremptory challenges as a result of using a peremptory challenge on Pitz and thus allowed two hostile jurors, Wolf and Weil, to serve on the jury during his trial.
In denying this claim the trial court said, "If Mr. Ullman had challenged this juror for cause, the challenge would have been denied since Pitz stated, that he would be able to put his feelings aside and follow the law." The trial court's determination on this issue is supported by the record. After Pitz made his initial statement in support of the death sentence, he was further questioned by defense counsel. During that questioning Pitz unequivocally stated that not only would he follow the law, but also that he would follow the law even if it conflicted with his personal convictions.
A prospective juror is only excusable for cause if the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his oath and the instructions as given by the court. See Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). In other words, the question is "whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." Kearse v. State, 770 So.2d 1119, 1128 (Fla. 2000). Trial counsel was not ineffective for exercising a peremptory challenge on Pitz, as there was no basis for a challenge for cause.
Blackwood also contends that jurors Wolf and Weil would have been excusable for cause if counsel had specifically asked whether their views and experiences with the criminal justice system would affect their ability to be fair and impartial jurors. Although each of the named jurors indicated that family members had been involved with the criminal justice system as victims, Blackwood has nonetheless failed to support his claim of bias. The record fails to reveal any basis upon which counsel could have reasonably challenged any of the jurors for cause.
The State specifically questioned the panel as to whether each person could "be fair and impartial to everyone," and neither Wolf nor Weil indicated an inability to render an impartial verdict. In response to an individual question regarding her ability to be fair and impartial, Wolf affirmatively *969 stated that she would follow the law. Because each juror ultimately expressed that he or she could put feelings aside and exercise his or her duties impartially, Blackwood fails to demonstrate any deficiency on the part of his defense counsel or any potential for prejudice. See Blackwelder v. State, 851 So.2d 650, 652 (Fla.2003) (holding that jury's recommendation of death was subject to proper adversarial testing where two jurors ultimately agreed that they were capable of recommending life after weighing mitigators); Barnhill v. State, 834 So.2d 836, 844 (Fla.2002) (holding that a juror is only unqualified if he or she expresses an unyielding conviction and rigidity towards the death penalty).

Ineffective Cross-Examination
Blackwood next argues that counsel's cross-examination of the lead detective was so devastating to the defense that it could have been considered an effective direct examination by the State on the issue of premeditation. He also argues counsel improperly permitted the detective to discredit Blackwood by allowing the detective to assert that Blackwood knew that the victim was dead before he left her home. Lastly, he contends that without laying a foundation, trial counsel cross-examined the detective regarding Blackwood's intelligence and consequently bolstered the view that Blackwood was quite smart and articulate.
Blackwood again fails to demonstrate that counsel's performance was deficient. Blackwood selects trivial examples of counsel's alleged ineffective cross-examination that simply do not demonstrate a constitutional deprivation of the Sixth Amendment right to counsel. On the contrary, the record indicates the success of trial counsel's cross-examination skill in diminishing the strength of the State's premeditation theory. Despite the detective's assertion that the crime was premeditated, counsel forced the detective to admit that there was no evidence that Blackwood had ever discussed or made plans to kill the victim. And despite the detective's stated belief that Blackwood knew the victim was dead when he left the scene, the transcript of counsel's examination demonstrates that counsel forced the detective to admit that Blackwood consistently reiterated his belief to the contrary and that Blackwood never wavered from that position. Counsel's cross-examination falls squarely within the range of reasonable professional assistance, particularly where "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
Blackwood fails to present any instance in which the performance of counsel falls to the level of being objectively unreasonable, particularly when considered in context of an overall strategy of showing that the murder was not premeditated. The trial court order denying Blackwood relief on this issue emphasized that counsel "carried out this particular trial strategy effectively and his performance fell well within the range of reasonable professional assistance." The instances of cross-examination cited by Blackwood are legally insufficient to demonstrate deficient performance of counsel and fail to demonstrate that Blackwood is entitled to relief on this claim.

Failure to Object
Finally, Blackwood contends that the motion for postconviction relief shows that trial counsel failed to object to comments that would have resulted in a motion for a mistrial. On direct examination by the State, one police detective mentioned that Blackwood had invoked his right to remain silent when questioned by police. Blackwood also posits that the State was permitted, without objection, to characterize *970 Blackwood's statement regarding his knowledge of the victim's pregnancy as "an outright lie." He argues trial counsel should have objected and requested a mistrial.
The detective's testimony may fairly be said to be a comment on Blackwood's silence where he stated, "At that point, he informed me he didn't want to speak to me anymore, that he had the right to an attorney." See Jackson v. State, 522 So.2d 802 (Fla.1988) (holding that all evidence that is fairly susceptible of being interpreted by the jury as a comment on the right of silence will be deemed as such a comment). However, on this record we hold that counsel was not ineffective for failing to object to this comment. Even assuming it was error in not objecting, Blackwood has failed to demonstrate prejudice. It was an isolated comment in a multi-day trial, and the comment was not emphasized to the jury. Under these circumstances, ineffective assistance has not been demonstrated.
Similarly, we find no ineffectiveness in counsel's failure to object to the State's characterization of Blackwood's statement. On direct examination, the State asked whether its witness thought Blackwood's statement, which declared that Blackwood was unaware that the victim was pregnant at the time of the murder, was an "outright lie." The witness answered in the affirmative. Blackwood argues that trial counsel's failure to object to the testimony should result in a new trial. This Court has held that it is improper for a prosecutor to state that a defendant has lied. See O'Callaghan v. State, 429 So.2d 691, 696 (Fla.1983). However, courts will not reverse a conviction where a prosecutor's comment on the defendant's veracity was made in fair reference to the evidence. See Zack v. State, 911 So.2d 1190, 1205 (Fla.2005)(denying claim of ineffective assistance of appellate counsel where prosecutor's characterization of defendant as a liar was supported by the evidence)(citing Lugo v. State, 845 So.2d 74, 107-108 (Fla.2003)).
The record demonstrates that the victim's mother and sister both testified that Blackwood knew that the victim was pregnant at the time of the murder. Thus, the harmful testimony elicited from the detective is at best cumulative to that elicited from two other witnesses. In fact, the testimony is likely to be more compelling from the mother and sister since they avowed personal knowledge of the lie through their contact with Blackwood prior to the murder. The State's characterization was made in fair reference to the trial evidence, and any motion for a mistrial on this basis could properly have been overruled.
Blackwood fails to demonstrate a reasonable probability that, but for counsel's failure to object to the State's characterization of his statement, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Rather than demonstrate that counsel's failure to object affected the fairness or reliability of the proceeding, Blackwood merely alleges that the prejudice is "apparent." A conclusory statement is insufficient to support the grant of an evidentiary hearing on a postconviction claim. See Johnson v. State, 904 So.2d 400 (Fla.2005). Moreover, the record conclusively refutes Blackwood's allegation. Blackwood fails to demonstrate that he was prejudiced as a result of any failure on the part of counsel to object. Because Blackwood also fails to demonstrate deficient performance in his claims regarding racial bias, substance abuse, jury selection, or cross-examination, the *971 trial court properly denied Blackwood's claim that counsel was ineffective during the guilt phase of his trial.

Ineffective Assistance During the Penalty Phase
In his postconviction motion Blackwood argued that he was denied effective assistance of counsel because trial counsel failed to adequately investigate and prepare mitigation evidence and because he was deprived of the adequate assistance of a mental health expert that is prescribed under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The trial court agreed and granted Blackwood a new penalty phase. The State now appeals that decision, contending that counsel made a reasonable strategic decision not to present mental health mitigation evidence. The State also contends that the record does not otherwise show a reasonable probability that the additional mitigation evidence would have resulted in a life sentence. We find no error in the trial court's determination of this issue and affirm the decision to grant Blackwood a new penalty phase proceeding.
In granting relief and finding trial counsel ineffective during the penalty phase, the trial court made the following observations:
Mr. Ullman never met with Dr. Macaluso.[9] On January 7, 1997, sixteen days prior to the penalty phase proceeding, Dr. Macaluso wrote a letter to Mr. Ullman advising that he could not assist in the penalty phase. After receiving the letter, on January 9, 1997, Mr. Ullman contacted Dr. Macaluso by telephone. Dr. Macaluso was unhappy with the fee arrangement and he advised Mr. Ullman that he was not willing to work for $150.00. Even though Dr. Macaluso never met with Mr. Blackwood subsequent to his competency evaluation, on November 3, 1995, Dr. Macaluso stated in his letter of January 7, 1997, that he "would not be able to testify with reasonable medical certainty that any of the statutory mitigating circumstances are present." This Court finds that the record reflects no evidence of any discussion with Dr. Macaluso relative to nonstatutory mental health mitigation evidence. . . .
Mr. Ullman testified that he was left in a terrible position only two weeks prior to the scheduled commencement of the penalty phase proceeding; he had no mental health mitigation witnesses. Rather than ask for a continuance of the penalty phase proceeding or contact Dr. Block-Garfield or Dr. Spencer,[10] this Court finds that Mr. Ullman did nothing. He defended Mr. Blackwood at the penalty phase proceeding without further investigation and without any mental health mitigation witness to provide statutory or nonstatutory mitigators. This Court finds that Mr. Ullman's performance was deficient under Strickland, supra.

. . . .
This Court finds that Mr. Ullman's decision not to investigate further by contacting Dr. Block-Garfield and/or Dr. Spencer and/or any other mental health expert fell far short of prevailing professional standards in capital cases. It should be noted that counsel's "strategic choices made after less than complete investigation are [considered] reasonable precisely to the extent that reasonable *972 professional judgments support the limitations on investigation." Strickland at 690-691, 104 S.Ct. 2052. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Wiggins [v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)] and Strickland at 690-691, 104 S.Ct. 2052. This Court finds that Mr. Ullman's decision to do absolutely nothing regarding mental health mitigation at the penalty phase was not reasonable under the facts and circumstances of this case.
In addition, the trial judge discussed the nonstatutory mental mitigating evidence that would have been available through the testimony of Dr. Block-Garfield. Dr. Block-Garfield would have testified that Blackwood was depressed and emotionally disturbed at the time of the offense. She would also have testified that Blackwood's verbal IQ was 70, placing him in the borderline mentally retarded range of intelligence. One of the tests administered by Dr. Block-Garfield indicated some neurological impairment, and she would have recommended a neurological evaluation had Mr. Ullman asked. Furthermore, Dr. Block-Garfield would have testified that Blackwood had no prior criminal history and was a good candidate for rehabilitation. Based on this information, the trial court found Dr. Block-Garfield was available to give persuasive mental health evidence during the penalty phase.
The trial court also evaluated the other mental health evidence that was presented at the evidentiary hearing. At the hearing the defense presented testimony from Dr. Martha Jacobson, a clinical psychologist, and Dr. Hyman Eisenstein, a clinical psychologist specializing in neuropsychology. Dr. Jacobson administered a number of personality tests to Blackwood and conducted clinical interviews. Based on this testing, the interviews, and review of statements, school records, testimony of witnesses, and Dr. Block-Garfield's testimony from the Spencer hearing, Dr. Jacobson diagnosed Blackwood as suffering from major depression and avoidant personality traits with masochistic features. Dr. Jacobson opined that Blackwood was experiencing extreme emotional disturbance at the time of the crime.
Dr. Eisenstein interviewed the defendant on three occasions and reviewed a summary of Blackwood's school records, a transcript of Blackwood's statement to the police, and police records from Fort Lauderdale. The doctor interviewed Blackwood's former boss and spoke with Blackwood's sister on the issue of a possible head injury. Dr. Eisenstein also opined that, within a reasonable degree of neuropsychological certainty, Blackwood was experiencing extreme emotional disturbance at the time of the commission of the murder.
In evaluating the prejudice prong of the Strickland analysis, the trial court said:
[T]his Court finds that there is a reasonable probability that, but for Mr. Ullman's errors of omission, the result of the penalty phase proceeding would have been different. In weighing the single aggravator against the mitigators presented, this Court gave great weight to the jury's recommendation. Had the jury been presented with expert mental health mitigation, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have changed their recommendation. At the very least, this Court finds that there is a probability sufficient to undermine confidence in the prior jury's sentencing recommendation.
The trial court therefore found ineffective assistance during the penalty phase of *973 Blackwood's trial because defense counsel's performance was deficient and there was resulting prejudice to the defendant. See Strickland.
To succeed on a claim of ineffective assistance, the defendant must show that counsel's deficient performance was so serious as to deprive him of his Sixth Amendment right to counsel and render the result of the proceedings unreliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. We are cognizant of the danger in assessing the adequacy of counsel's investigation and preparation through the distorting lens of hindsight and take care to evaluate the performance through counsel's perspective at the time. See id. at 689, 104 S.Ct. 2052.
In State v. Coney, 845 So.2d 120 (Fla.2003), under somewhat analogous facts, we held:
[A] circuit court's ruling on an ineffectiveness claim is a mixed question of law and fact, and a reviewing court must defer to the circuit court's factual findings as long as those findings are supported by competent, substantial evidence in the record. Competent, substantial evidence is tantamount to legally sufficient evidence, and a reviewing court must assess the record evidence for its sufficiency only, not its weight.
Id. at 132-33 (footnote omitted). This deferential standard of review foremost requires us to determine whether there is competent, substantial evidence to support the trial court's factual findings.
In this instance, the postconviction court found that trial counsel's "decision to do absolutely nothing regarding mental health mitigation at the penalty phase was not reasonable under the facts and circumstances of this case." Though the State attempts to offer factual evidence in support of its position that Ullman conducted a very thorough investigation and was thus not deficient, such facts at best demonstrate that there was conflicting evidence on this issue. "Evidence contrary to the circuit court's ruling is outside the scope of the inquiry at this point, for a reviewing court cannot reweigh the `pros and cons' of conflicting evidence." Id. at 133. We agree with Blackwood's contention that the court made adequate findings of fact establishing trial counsel's prejudicial failure to meaningfully investigate and present statutory and nonstatutory mental health mitigation at the penalty phase. We also agree that these findings are supported by competent, substantial evidence in the record.
The record establishes that approximately five weeks before commencement of the guilt phase of the trial, counsel contacted psychiatrist Dr. Peter Macaluso with the intent of engaging his services as a mental health expert. Dr. Macaluso had evaluated Blackwood in 1995 and found him incompetent to stand trial. He also had concluded that Blackwood suffered from a depressive illness with possible psychotic features. Counsel forwarded Dr. Macaluso a packet of materials related to Blackwood's mental health mitigation approximately two months before trial and also sent a follow-up letter. One week after the jury returned its guilty verdict, counsel wrote to the doctor and officially requested that he testify in the penalty phase proceedings. He wrote again several days later and provided the date of the penalty phase proceedings and other information. Dr. Macaluso first responded by letter three weeks after counsel's formal request, only sixteen days before sentencing was set to begin. The letter expressed the doctor's dissatisfaction with the fee arrangement and notified counsel that he would be unable to testify that the statutory mitigators were present. It is apparent *974 that counsel had never confirmed the use of the expert's services. Though the mishap cannot be entirely attributed to fault of counsel, it is telling that with only two weeks before commencement of the penalty phase, counsel had not attempted to schedule an evaluation of the defendant with the sole expert upon whom he was relying for evidence of mental health mitigation. In fact, counsel had not even spoken or met with the expert. Trial counsel proceeded to the penalty phase without mental health evidence.
The trial court noted there was no evidence that trial counsel had discussed nonstatutory mental health mitigation evidence with the expert. Though the State contends that counsel's failure to present mental health mitigation evidence to the jury was a strategic decision, the record reveals that Blackwood's counsel admitted his intention to rely upon Dr. Macaluso's expert testimony at the penalty phase to support the existence of mental health mitigating circumstances. Critically, upon learning that this expert was unavailable, counsel discontinued any effort to investigate and present mental health mitigation to the jury.
The United States Supreme Court has advised, "[I]nvestigations into mitigating evidence `should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.1.4(c) (1989)). Here, counsel failed to investigate whether Dr. Macaluso could testify to the existence of any nonstatutory mitigating circumstances and never attempted to secure any other mental health expert for an evaluation of Blackwood. Despite a strategy of presenting mental health mitigation evidence, trial counsel wholly abandoned efforts to present evidence from a mental health expert to the jury. In light of trial counsel's strategy, his failure to attempt to present mental health mitigation evidence to the jury was unreasonable. There is substantial, competent evidence in the record to support the trial court's finding of deficient performance.
The State also argues that no prejudice could have resulted from any alleged deficiency. To establish prejudice, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Presented with only the mitigation testimony of family and friends, the jury recommended a sentence of death for Blackwood by a vote of nine to three. Thereafter, trial counsel presented mental health mitigation evidence to the sentencing judge.
One month after the verdict, trial counsel contacted clinical psychologist Dr. Trudy Block-Garfield to enlist her services as a mental health expert. Dr. Block-Garfield evaluated Blackwood and suggested to trial counsel that Blackwood might suffer from a neurological deficit. Counsel declined the opportunity to confirm this through additional testing. The Spencer hearing took place approximately six weeks after the expert was engaged. Dr. Block-Garfield testified that Blackwood had a verbal IQ of 70, which placed him in the range of borderline retardation. She found that he suffered from mental or emotional disturbance at the time of the crime, but did not find the statutory mitigator of "extreme" mental or emotional disturbance. She did find another statutory *975 mitigatorno prior criminal history and also testified to the existence of several nonstatutory mitigators.
The trial court relied heavily upon Dr. Block-Garfield's testimony but was required to give great weight to the jury recommendation. The court concluded that the single aggravating circumstance outweighed the finding of one statutory mitigating circumstance of significant weight and eight nonstatutory mitigating circumstances of varying weights. The court thus accepted the recommendation of the jury and imposed the death sentence. It cannot be overlooked that a court's imposition of the sentence must originate in the recommendation of the jury. See Tedder v. State, 322 So.2d 908, 910 (Fla.1975) (stating that under Florida's death penalty statute the jury recommendation should be given great weight); Cooper v. State, 336 So.2d 1133, 1140 (Fla.1976) ("The Legislature intended that the trial judge determine the sentence with advice and guidance provided by a jury, the one institution in the system of Anglo-American jurisprudence most honored for fair determinations of questions decided by balancing opposing factors.").
The trial court observed that persuasive nonstatutory mitigation evidence was available through Dr. Block-Garfield that was never presented to the jury. This expert testified regarding Blackwood's extreme depression, capacity for rehabilitation, and lack of a prior criminal history. She also noted that Blackwood scored in the impaired range on the Benton Visual Retention Test, which suggested a neurological impairment. Trial counsel admitted that Dr. Block-Garfield advised him that additional testing by a specialist was necessary to confirm impairment. Counsel stated that he failed to pursue such testing because of "time parameters, costs involved, case costs involved." Despite a preliminary indication of neurological impairment, Blackwood was never tested for the purpose of mental health mitigation before the death sentence was imposed.
At the postconviction hearing, further expert mental health testimony was presented by the defense from two additional psychologists, both of whom found the statutory mitigating circumstance of extreme mental or emotional disturbance at the time of the crime. Dr. Hyman Eisenstein determined that this statutory mitigating circumstance was present after interviewing Blackwood's family members, reviewing collateral sources, and conducting a complete battery of neuropsychological tests on Blackwood. Dr. Eisenstein also presented evidence indicating that Blackwood was incapable of complete decision-making and that his borderline intellectual functioning was in the bottom five percent of the population. Similarly, after reviewing relevant materials and conducting extensive interviews and comprehensive personality tests with Blackwood, clinical psychologist Dr. Martha Jacobson also determined that Blackwood suffered from major depression and had been under the influence of an extreme mental or emotional disturbance at the time of the murder. Substantial interviews with Blackwood's family members also permitted Dr. Jacobson to reconstruct a history of head injuries endured by Blackwood that supported the neurological impairment suggested in Dr. Block-Garfield's initial screening.
The State contends that Blackwood has years later merely found more favorable testimony in these mental health experts, which is generally insufficient to entitle him to relief. See, e.g., Cherry v. State, 781 So.2d 1040, 1052 (Fla.2000). However, a substantial amount of mitigation evidence that is significant in nature, noncumulative, and unrefuted by the record was presented at the evidentiary hearing. In *976 addition to the revelation of a second statutory mitigator, potential nonstatutory mental health mitigators were also presented, including corroborating evidence of neuropsychological impairment. Importantly, this mitigation evidence was available at the time of the penalty phase, and trial counsel had in fact reasonably concluded that presentation of mental health mitigation evidence to the jury was warranted.
Despite that conclusion, Blackwood's sentencing jury was provided with no opportunity to consider mental health mitigation evidence from a mental health expert. See Phillips v. State, 608 So.2d 778, 783 (Fla.1992) (remanding for a new sentencing after finding that the jury was entitled to hear strong mental health mitigation evidence as well as background mitigation evidence that was less compelling). After considering only nonstatutory mitigating circumstances, the jury recommended the death penalty by a vote of nine to three. On direct appeal, this Court affirmed the trial court's sentence by a vote of four to three, finding that the court did not abuse its discretion in determining that the single aggravator outweighed the mitigating circumstances.
On this record, we agree with the trial judge's conclusion that trial counsel was ineffective because there was both deficient performance and prejudice. This Court has often repeated that the sentence of death is reserved for the most aggravated and least mitigated of murders. See Woods v. State, 733 So.2d 980, 990 (Fla. 1999) (reversing sentence of death in light of one valid aggravator where there was substantial mitigation evidence including borderline IQ and lack of prior criminal behavior); Kramer v. State, 619 So.2d 274, 278 (Fla.1993) (reversing for life sentence where significant mitigating circumstances outweighed two aggravators). As noted previously in this case, "[s]ignificantly, the death sentence imposed in this case rests solely upon a trial court finding of only one aggravating factor." Blackwood v. State, 777 So.2d 399, 413 (Fla.2000) (Anstead, J., concurring in part and dissenting in part). We therefore affirm the trial court's determination that in light of the available mental health mitigation evidence, trial counsel's failure to further investigate, prepare, and present such evidence to the jury constituted ineffective assistance of counsel during the penalty phase. We affirm the trial court's determination that a new penalty phase trial is warranted.

PETITION FOR WRIT OF HABEAS CORPUS
Blackwood presents two interrelated claims for habeas corpus relief based upon alleged violations of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), or Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Blackwood raised a Ring/Apprendi claim in his postconviction motion in November 2002. The claim was summarily denied by the trial court, and that denial was not appealed. Because Blackwood's habeas claims either have been raised or could have been raised on appeal or at postconviction, they are now procedurally barred. See Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992) ("Habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been . . . or were raised on direct appeal."). Furthermore, both the United States Supreme Court and this Court have held that Ring does not apply retroactively; thus, the claim is otherwise barred. Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); Johnson v. State, 904 So.2d 400 (Fla.2005).
Moreover, Blackwood presents no meritorious arguments in his petition and fails *977 to distinguish his case from the many in which the Court has rejected the same claims. This Court has rejected the allegation that the jury is required to make specific findings of the aggravating circumstances necessary for the imposition of the death penalty. See, e.g., Porter v. Crosby, 840 So.2d 981 (Fla.2003). Likewise, this Court has consistently denied Ring claims alleging that aggravating circumstances must be included in the indictment or found by a unanimous verdict. See Hodges v. State, 885 So.2d 338 (Fla.2004); Blackwelder v. State 851 So.2d 650 (Fla. 2003); Porter v. Crosby, 840 So.2d 981 (Fla.2003). Recently, this Court also decided that the requirement of a majority vote on each aggravator is an unnecessary expansion of Ring. See State v. Steele, 921 So.2d 538 (Fla.2005) (holding that the trial court departed from the essential requirements of law in requiring the jury to find specific aggravators on a penalty phase special verdict form). Considering the significant case law from this Court finding no Ring violations based on these claims, Blackwood has failed to demonstrate that he is entitled to habeas relief.

CONCLUSION
Accordingly, we affirm the trial court's order denying Blackwood a new trial and affirm that portion of the order granting him a new penalty phase based on ineffective assistance of counsel. We deny habeas relief.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO and BELL, JJ., concur.
NOTES
[1] Ullman was not practicing law at the time of the postconviction hearing. His license to practice law was suspended for three years in December 2001, effective nunc pro tunc from February 1, 2000, because of his conviction on federal felony charges of using a telephone to facilitate a drug purchase.
[2] Spencer v. State, 615 So.2d 688 (Fla.1993).
[3] On direct appeal, Blackwood raised nine issues: (1) whether the sentence of death was disproportionate because the trial court found only one aggravator and substantial mitigation; (2) whether the state failed to establish premeditation; (3) whether the court erred in finding the HAC aggravator; (4) whether the court erred in refusing to admit three evaluative reports of Dr. Trudy Block-Garfield; (5) whether the court erred in allowing the victim's daughter to testify regarding certain statements made by Blackwood; (6) whether the court erred in rejecting the statutory mitigator of extreme disturbance because Dr. Block-Garfield applied an incorrect standard in her analysis; (7) whether the court erred by failing to make the determination under section 921.141(3) that the HAC aggravator was sufficient to justify the death penalty; (8) whether the trial court erred in failing to find Blackwood's age at the time of the crime, thirty-eight years, to be a mitigating circumstance; and (9) whether the court erred in excluding hearsay evidence of statements made by the decedent. Blackwood, 777 So.2d at 405-06 n. 4.
[4] The issues raised were ineffective assistance of counsel based on counsel's substance abuse and failures during the guilt phase of trial, denial of Blackwood's rights under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), inadequate mental health evaluation, ineffective assistance of counsel based on failure to adequately investigate and prepare mitigating evidence, and a violation of Blackwood's Sixth Amendment rights as outlined in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[5] Huff v. State, 622 So.2d 982 (Fla.1993).
[6] Blackwood does not challenge the trial court's summary denial of his other postconviction claims. One claim, which alleged that trial counsel failed to adequately investigate and prepare other mitigating evidence, was summarily denied as cumulative, legally insufficient, or harmless error beyond a reasonable doubt. Blackwood's final claim, which asserted that his rights were violated under an application of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), was summarily denied based upon several decisions from this Court.
[7] The racist remark was allegedly made when counsel was arrested for driving under the influence.
[8] Blackwood mistakenly analogizes his situation to that of the defendant in Bruno v. State, 807 So.2d 55 (Fla.2001), in which there was abundant evidence of counsel's impairment during the representation. There, counsel had begun substance abuse therapy and admitted himself into a hospital. He denied, however, being impaired while working on the case. Both the trial court and this Court ultimately declined relief on that basis.
[9] Psychiatrist Dr. Peter Macaluso, who had previously evaluated Blackwood for competency, was expected to present evidence of mental health mitigation.
[10] Psychiatrist Dr. John Spencer had also evaluated Blackwood for competency.