PARIENTE, J.,
concurring.
I join the Court’s opinion, which affirms Middleton’s conviction and death sentence. I write separately to emphasize the importance of a mitigation specialist to the defense team’s investigation and presentation in a capital case and to encourage trial courts to provide defense counsel the assistance of both a mitigation specialist and a fact investigator upon a proper and timely request.
In my view, a trial court should not deny a request for a mitigation specialist either based on the misconception that these specialists are similar to fact investigators or based on undue emphasis on an additional expert “costing too much.” It is also important that prosecutors do not add to that misconception by arguing, as the prosecutor did here, that all “a mitigation expert does is synthesiz[e] spankings and timeouts and things of that nature,” and “you don’t have to be an expert” to “go out and find people who can offer mitigation about ... bumps [the defendant] got on the head *1186 or spankings he got in school or whatever the case might be.”[9]
As for the importance of a mitigation specialist, this Court has emphasized that “the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated — this is an integral part of a capital case.” State v. Lewis, 838 So.2d 1102,1113 (Fla. 2002). The investigation into mitigation can be a monumental undertaking, requiring a significant amount of time that would ideally begin as soon as possible. See American Bar Association (ABA) Guidelines for the Appointment & Performance of Defense Counsel in Death Penalty Cases (ABA Guidelines), Commentary to Guideline 1.1, reprinted in 31 Hofstra L. Rev. 913, 925 (2003). The difference between a thorough assessment of mitigation and a cursory one could, quite literally, be a matter of life and death. When funding is properly requested, the defense team should receive the assistance of both a fact investigator and a mitigation specialist to ensure a complete and reliable mitigation investigation.
There is. an “apparent widespread use of mitigation specialists or coordinators” in Florida, as the First District Court of Appeal has explained when quashing a trial court order denying a defendant’s motion for additional mitigation coordinator fees. Criminal Specialist Investigations, Inc. v. State, 58 So.3d 883, 886 (Fla. 1st DCA 2011).[10] Cases in this Court demonstrate that the use of a mitigation specialist in capital cases is not unusual in Florida. See, e.g., Turner v. State, 37 So.3d 212, 219 (Fla. 2010) (noting that a mitigation specialist testified in a capital case); Twilegar v. State, 42 So.3d 177, 203 (Fla. 2010) (noting that the defense counsel had enlisted the assistance of a mitigation specialist in a capital case); Deparvine v. State, 995 So.2d 351, 360 (Fla. 2008) (noting that a mitigation specialist testified in the penalty phase of a capital case).[11]
The ABA has published guidelines to “set forth a national standard of practice for the defense of capital cases in order to ensure high quality legal representation” for defendants facing a possible death penalty. ABA Guidelines, 31 Hofstra L. Rev. at 919. At the hearing on the motion to appoint a mitigation specialist in this case, the defense counsel urged the trial court to consider the ABA Guidelines, by explaining that these Guidelines “included] a suggestion, if not a mandatory requirement, that a mitigation specialist ... should be appointed in death cases because of the nature of the crime and because of the serious nature -of the potential penalty.” The prosecutor’s misguided response was, “I could care less about what they [the *1187 ABA] think about the death penalty and how it operates in the State of Florida.”
Contrary to the opinion of the prosecutor in this case, the ABA Guidelines do have relevance to capital cases, even if these guidelines are riot binding in determining whether counsel rendered ineffective assistance. The United States Supreme Court has referred to the various renditions of these guidelines as “guides to determining what is reasonable” for an attorney’s performance, or as reflecting “well-defined norms” for attorney conduct. Rompilla v. Beard, 545 U.S. 374, 387 & n.7, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). This Court has also relied upon these guidelines in determining whether trial counsel'has adequately investigated mitigation evidence. See, e.g., Parker v. State, 3 So.3d 974, 984-85 (Fla. 2009) (citing the ABA Guidelines in a postconviction appeal to determine that trial counsel’s performance as to investigating and presenting mitigation evidence was deficient); Blackwood v. State, 946 So.2d 960, 974 (Fla. 2006) (citing the Supreme Court’s reliance on the ABA Guidelines in Wiggins in determining that trial counsel unreasonably failed to attempt to present mental health mitigation evidence, and concluding that there was competent, substantial evidence to support the trial court’s finding of deficient performance).
A mitigation specialist is “an indispensable member of the defense team throughout all capital proceedings!,] ... possessing] clinical and information-gathering skills and training that most lawyers simply do not have.” ABA Guidelines, Commentary to Guideline 4.1, 31 Hofstra L, Rev. at 959. Not only do mitigation specialists have honed skills in gathering and understanding the nature of potential mitigation evidence, such as the significance of early childhood trauma, but mitigation specialists — unlike the defendant’s lawyer— can testify in the penalty phase to impart the results of their mitigation investigation to the jury that must weigh the mitigation and aggravation in determining whether to recommend the death sentence.
As opposed to fact investigators, mitigation Specialists “are generally trained in the social sciences, with college degrees in social work or psychology,” and “are adept at gathering institutiorial records, interviewing lay and professional people, and compiling case histories.” Hon. Helen G. Berrigan, The Indispensable Role of the Mitigation Specialist in a Capital Case: A View From the Federal Bench, 36 Hofstra L. Rev. 819, 827-28 (2008). “Significantly, they are trained in uncovering family trauma and screening for often subtle mental and psychological disorders,” and are “experienced in interpersonal communication so they know how to develop trust and rapport with even the most difficult or distrustful of individuals.” Id. at 828 (footnote omitted). Part of the mitigation specialist’s job is to “conduct a comprehensive life history investigation of the client and identify all relevant mitigation- issues.” Richard G. Dudley Jr. & Pamela Blume Leonard, Getting It Right: Life History Investigation as the Foundation for a Reliable Mental Health Assessment, 36 Hofstra L. Rev. 963, 966 (2008) (footnote omitted).
A mitigation specialist has the potential to benefit a criminal defendant in a capital case in a wide variety of ways, as summarized by the commentary to Guideline 4.1 of the ABA Guidelines:
They have the time and the ability to elicit sensitive, embarrassing and often humiliating evidence, (e.g., family sexual abuse) that the defendant may have never disclosed. They have the clinical skills to recognize such things as congenital, *1188 mental or neurological conditions, to understand how these conditions may have affected the defendant’s development and behavior, and to identify the most appropriate experts to examine the defendant or testify on his behalf. Moreover, they may be critical to assuring that the client obtains therapeutic services that render him cognitively and emotionally competent to make sound decisions concerning his case.... The mitigation specialist compiles a comprehensive and well-documented psycho-social history of the client based on an exhaustive investigation; analyzes the significance of the information in terms of impact on development, including effect on personality and behavior; finds mitigating themes in the client’s life history; identifies the need for expert assistance; assists in locating appropriate experts; provides social history information to experts to enable them to conduct competent and reliable evaluations; and works with the defense team and experts to develop a comprehensive and cohesive case in mitigation.
The mitigation specialist often plays an important role as well in maintaining close contact with the client and his family while the case is pending. The rapport developed in this process can be the key to persuading a client to accept a plea to a sentence less than death.
ABA Guidelines, Commentary to Guideline 4.1, 31 Hofstra L. Rev. at 959-60 (footnotes omitted); see also ABA Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases (2008), reprinted in 36 Hofstra L. Rev. 677, 682 (2008) (explaining that mitigation specialists are skilled interviewers who can identify and locate relevant persons, recognize and elicit information related to mental health, establish a rapport with witnesses, and “advise counsel on the appropriate mental health and other expert assistance”).
The importance of appointing a mitigation specialist becomes all the more evident in a case involving an indigent defendant, where the trial court appoints private counsel, who generally does not have the same institutional resources as the Public Defender’s Office. In such cases, the trial judge effectively decides “what financial assistance, investigators, or experts the defense will be allowed.” Berrigan, 36 Hofstra L. Rev. at 823. “By controlling the purse strings, the trial judge effectively controls the quantity and quality of information that will flow to the jury if a penalty phase is necessary.” Id. As the Eleventh Circuit Court of Appeals has stated, “[p]ermitting an indigent capital defendant to introduce mitigating evidence has little meaning if the funds necessary for compiling the evidence [are] unavailable.” Westbrook v. Zant, 704 F.2d 1487, 1496 (11th Cir. 1983), overruled on other grounds by Peek v. Kemp, 784 F.2d 1479, 1494 (11th Cir. 1986).
Accordingly, given the importance of a mitigation specialist to the defense’s presentation in a capital case, I strongly encourage trial courts to liberally grant proper requests for mitigation specialists. Nevertheless, I would not find reversible error in this case because the defense lawyer expressly stated that he would renew his request for a mitigation specialist, but he did not do so. Further, in this direct appeal, Middleton is unable to show how he was prejudiced. I therefore concur in the affirmance of the conviction and death sentence.
LABARGA, C.J., concurs.

. The prosecutor's sarcastic comments reflect not only a misunderstanding of the effect of early childhood traumas on brain development but also highlight the tendency of some prosecutors to degrade mitigation. Cf. Oyola v. State. 158 So.3d 504, 512-13 (Fla. 2015) (rebuking prosecutorial arguments that characterize a defendant’s mitigating evidence as "excuses,” "make-believe,” "flimsy,” or "phantom”).

. The issue was before the First District, rather than this Court, because a life sentence was imposéd following the penalty phase, and the mitigation specialist was requesting additional compensation for her work in having successfully developed mitigation.

. Since at least 2011, mitigation specialists have been recognized as a part of capital cases, when the General Appropriations Act of 2011 set the maximum hourly rate for mitigation specialists at $75. See ch. 2011-69, § 4, at 126, Laws of Fla,; see also § 27.425, Fla. Stat. (indicating that the rate specified annually in the General Appropriations Act is the maximum compensation rate in cases in which the court has appointed private counsel or declared a person indigent for costs).