# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D16-3986
_____

CHARLES JOHNSON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Mallory D. Cooper, Judge.

August 24, 2018

OPINION ON MOTION FOR REHEARING

B.L. THOMAS, C.J.

We have before us Appellant's motion for rehearing. We grant in part and deny in part Appellant's motion, withdraw our former opinion of June 18, 2018, and substitute this opinion in its place.

In this collateral appeal, we address whether Appellant's counsel provided constitutionally ineffective assistance of counsel by failing to object to testimony by a law enforcement officer who specialized in training and utilizing dogs to track suspects and detect odors. The officer used his dog "Diesel" to track down fleeing suspects involved in a home burglary.

At trial, Officer Michael Michener testified regarding Diesel's ability to detect odors from someone in an anxious mental or physical state, running from police or otherwise in a state of distress. He had worked with the Jacksonville Sheriff's Office for twenty-two years, with sixteen years as a K-9 handler. Officer Michener testified that he selected Diesel when the dog was eleven months old; he personally trained him and had been working with Diesel for nearly two years. Officer Michener testified that Diesel was an explosive-detection dog, but also performed patrol functions, including tracking people based on odor.

Officer Michener testified that he and Diesel were dispatched to the scene of a burglary where people were fleeing from police. When he arrived at the neighborhood, Diesel indicated that he was sensing human body odor consistent with the nervousness or anxiety of someone fleeing. The officer testified that animals react depending on the human odor they are searching for; people who are fleeing give off a different type of odor than sedentary people, and based on his experience with Diesel and other dogs, he can tell when Diesel is indicating someone has been fleeing. He gave Diesel a command to locate human odor. Diesel led Officer Michener to a private fence, began pulling the officer very strongly, and eventually led him to the backyard of a residence and a shed, where the officer observed three people hiding. Diesel made contact with one of the people in the shed, and all three were eventually detained, including Appellant.

Appellant was convicted of burglary of a dwelling and sentenced to thirty years' imprisonment. This Court affirmed the judgment and sentence without opinion. *Johnson v. State,* 68 So. 3d 238 (Fla. 1st DCA 2011) (table).

The relevant trial testimony between the prosecutor and Officer Michener, to which Appellant's trial counsel did not object, was as follows:

Q: Well, let me take you back then to October, that particular day on the 29th. Did you do a search with Diesel?

2

A: Yes, ma'am, I did.

Q: And what method did you actually use that day?

A: Because of the nature of the information I was obtaining through the police radio prior to getting there, this was what I would consider to be a hot search, meaning I actively had people that were fleeing from the police, I had bodies that were going through neighborhoods. So the most efficient thing to work towards is the dog's abilities to capitalize on that, is what we call an area search. To break that down . . . we went with what we call a yard search which is a systematic search of each yard as we go.

Q: And when you're doing that systemic search with Diesel, what is he picking up on that will help him locate a suspect?

A: The command I give the dog is to locate human odor. That -- that is, in essence, what the command means to the dog. When we start, I will tell the dog locate human odor so I'm looking for human beings is what I'm looking for.

Q: And is there a way that Diesel reacts when he locates human odor?

A: Yes, ma'am. The animals react definitely depending on the human odor they happen to be searching for. *Human beings that are running or fleeing from the police obviously give a different type of scent, cast a different type of the odor off their body than say you and I do sitting here today.*

Q: Is that because they're nervous, sweating, that sort of thing?

A: Sweating, fearful. Anxiety plays a factor into it. There's a lot of different factors that play into it, versus

3

somebody that may have been lost and walked off into the woods and sitting there. Now, he's capable of finding each of them in each of those cases, but the reaction from him is vastly different for those two.

Q: So based on your experience with Diesel as well as the other dogs *you can tell when he's indicating on somebody that is potentially a suspect who has been fleeing, say, versus, a homeowner in their backyard gardening*?

A: *Yes, ma'am.*

(Emphasis added.) According to Appellant's postconviction motion, this was "inconceivable scientific testimony that a canine animal could smell a guilty suspect." And defense counsel at trial exacerbated this "inconceivable" testimony on cross-examination by eliciting even more "incomprehensible testimony":

Q: So Diesel is trained to detect any human odor?

A: That's correct.

Q: Now, you stated on direct that Diesel is trained to pick up on like if somebody's been running or nervous or whatever it may be, correct?

A: Yeah. He has *self-taught himself* that over a series of involved pursuits . . . .

(Emphasis added.)

Appellant argued in his postconviction motion, "Michener acknowledges that not only is his canine able to sniff out the difference between guilty suspects and your average Joe, but [Diesel] has apparently 'self-taught himself' this miraculous feat." But notwithstanding the lavish description by Appellant, the issue here is straightforward: Did counsel provide deficient representation in failing to object to the State's direct examination? The trial court found no deficient performance, and did not reach the issue of prejudice.

4

A claim of ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668, 690 (1984). To prove ineffective assistance, an appellant must allege 1) the specific acts or omissions of counsel that fell below a standard of reasonableness under prevailing professional norms, *see id.* at 690; and 2) that the appellant's case was prejudiced by these acts or omissions such that the outcome of the case would have been different, *see id.* at 692. To prove the first prong, "[t]he defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant." *Blackwood v. State*, 946 So. 2d 960, 968 (Fla. 2006) (citing *LeCroy v. Dugger*, 727 So. 2d 236, 239 (Fla. 1998)). "[T]he two-prong test for determining the validity of an ineffective assistance claim requires the defendant to demonstrate that (1) counsel's performance was deficient, *and* (2) the deficient performance prejudiced the defendant." *Gibbs v. State*, 604 So. 2d 544, 546 (Fla. 1st DCA 1992) (citing *Johnson v. State*, 593 So. 2d 206 (Fla. 1992)) (emphasis added).

Appellant argues that Officer Michener was a lay witness not qualified to give specialized opinion testimony under section 90.702, Florida Statutes, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Section 90.701, Florida Statutes, describes when lay witnesses may give opinion testimony:

> If a witness is not testifying as an expert, the witness's testimony about what he or she perceived may be in the form of inference and opinion when:

> (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and

> (2) The opinions and inferences do not require a special knowledge, skill, experience, or training.

"Of course, '[a]ll lay witnesses have some specialized knowledge—knowledge relevant to the case that is not common to everyone. . . . Indeed, that is why all witnesses—lay or expert—are called: to get what they know about the case that other people do not.'" *L.L v. State*, 189 So. 3d 252, 256-57 (Fla. 3d DCA 2016) (quoting Paul F. Rothstein, *Fed. Rules of Evidence* Rule 701 (3d ed.)).

Here, the officer's testimony could not have been intelligently presented without admitting his answers regarding Diesel's asserted abilities. But under section 90.701, Florida Statutes, the question is, first, was he required to "communicate . . . inferences and opinions [that would] not mislead the trier of fact to the prejudice of the objecting party." Here, we think this criterion was met. The officer could not intelligently present his observations of Diesel's actions without expressing an opinion about the dog's training and capabilities. And a layperson understands that a dog, especially a specifically trained dog, could detect odors that human beings cannot detect or follow. The use of drug-sniffing dogs, and dogs used to smell and detect people trapped in rubble, is well known and understood. When viewed in context, the officer did not attempt to testify that Diesel could smell a burglar, but only that he could detect odors of a person in an anxious state attempting to flee, i.e., a "fight or flight" physiological phenomenon. We further do not think the officer's testimony caused unacceptable prejudice to the opposing party. A jury could believe or disbelieve the officer's testimony, as his lay opinions were not unreasonably expressed or based on any esoteric knowledge or techniques that could not be readily discredited on cross-examination.

The second question we must answer under section 90.701, Florida Statutes, is whether the officer's testimony contained any "special knowledge, skill, experience, or training." If so, a defense objection would have been properly sustained under the statute.

Federal courts have addressed the admission of lay opinion testimony under a federal evidentiary statute that is substantially similar and also prohibits such lay testimony from containing expert analysis:

6

Federal Rule of Evidence 701 allows lay opinion that "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Rule 701 permits such testimony if it is based on "relevant historical or narrative facts that the witness has perceived," *Teen–Ed, Inc. v. Kimball Intern., Inc.,* 620 F.2d 399, 403 (3rd Cir. 1980), and if it "would help the factfinder determine a matter in issue," *Hurst v. United States,* 882 F.2d 306, 312 (8th Cir. 1989). "While the ordinary rule confines the testimony of a lay witness to concrete facts within his knowledge or observation, the [c]ourt may rightly exercise a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience." *United States v. Oliver,* 908 F.2d 260, 264 (8th Cir. 1990) (citing *Batsell v. United States,* 217 F.2d 257, 262 (8th Cir.1954)). Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events.

*United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003) (footnote omitted). In *Espino,* the Eighth Circuit rejected arguments that the lay witness could not testify regarding the weight of methamphetamine, where the witness did not necessarily weigh every evidentiary item:

Here, these witnesses, particularly Goatley, testified that they either actually weighed the quantities of methamphetamine purchased from Espino, or through their experience knew that the volume sold generally constituted a certain weight of the drug. These lay witnesses testified based upon their experience. They were not attempting to explain any technical or specialized information, and several of them had actually used a scale to weigh the methamphetamine.

7

*Id.* at 797.

In this case, the officer certainly had the requisite experience training dogs, but the question is whether his testimony constituted "technical or specialized information" and was thus impermissible lay expert testimony. We think Appellant's collateral counsel reads too much into the officer's testimony in his argument that the officer offered an impermissible expert opinion. In essence, the officer was testifying that Diesel could sense and identify a person running, in contrast to a sedentary person. While the question containing the phrase "potentially a suspect" may have been unduly precise, the question can only be fairly understood to mean that Diesel could detect a person who had been running, not literally whether they were guilty.

A federal district court has specifically ruled that testimony by a law enforcement officer about canine-training procedures was admissible as lay opinion:

> The Court will allow Sergeant Skoro to testify as a lay witness under Federal Rule of Evidence 701. His personal knowledge or perceptions based on his experience as a K–9 trainer provide sufficient foundation for lay opinion testimony. Thus, his testimony will be limited to opinions or inferences that are rationally based on his perception and that will help the jury understand the facts about which he is testifying. *See* Fed. R. Evid. 701; *United States v. Espino*, 317 F.3d 788, 797 (8th Cir. 2003). Plaintiff's Motion in Limine on this point is denied.

*Abdullahi v. Ungurian*, 2006 WL 145076, at *1 (D. Minn. Jan. 18, 2006) (footnote omitted). Federal courts have upheld the admission of lay opinion regarding other law enforcement practices as well:

> We have previously explained that opinion testimony by a witness who has not been qualified as an expert witness under Rule 702 may nevertheless be admissible under Rule 701 of the Federal Rules of Evidence provided that such testimony is "'rationally based on the

8

perception of the witness,' [is] 'helpful to ... the determination of a fact in issue,' and [is] 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Santiago*, 560 F.3d 62, 66 (1st Cir. 2009) (second alteration in original) (quoting Fed. R. Evid. 701). We have explained further that the touchstone for the admissibility under Rule 701 of such lay-opinion testimony is whether the testimony has the "potential to help the jury." *United States v. Albertelli*, 687 F.3d 439, 447 (1st Cir. 2012).

Under this standard, we have deemed testimony inadmissible "when the jury can *readily* draw the necessary inferences and conclusions without the aid of the opinion." *United States v. Etienne*, 772 F.3d 907, 919 (1st Cir. 2014) (emphasis in original) (citations omitted). We have also explained that helpful testimony is typically "based on the lay expertise a witness personally acquires through experience, often on the job." *United States v. Vega*, 813 F.3d 386, 394 (1st Cir. 2016) (quoting *United States v. Maher*, 454 F.3d 13, 24 (1st Cir. 2006)); *see also United States v. Ayala–Pizarro*, 407 F.3d 25, 28–29 (1st Cir. 2005). And, we have noted that "a police officer noticing patterns of behavior across criminal operations uses straightforward logic to conclude a defendant's behavior fits within that pattern and thus, does not need to be qualified as an expert." *Vega*, 813 F.3d at 394.

Accordingly, we have upheld district court decisions to admit, under Rule 701, testimony from police officers "translating jargon common among criminals," even though not "traditional" lay testimony. *Albertelli*, 687 F.3d at 446-47; *see also Dunston*, 851 F.3d at 96 (noting that "[a]pplication of Rule 701 in the drug-trafficking context is not novel: 'we have long held that government witnesses with experience in drug investigations may explain the drug trade and translate coded language' for factfinders through lay opinion testimony" (quoting *United States v. Rosado-Pérez*, 605 F.3d 48, 56 (1st Cir. 2010))).

*United States v. Spencer*, 873 F.3d 1, 14–15 (1st Cir. 2017), *cert. denied,* 138 S. Ct. 1030 (2018) (emphasis added).

We conclude that Appellant's collateral claim was correctly denied without an evidentiary hearing, as any objection to the officer's testimony would have been overruled, and we thus agree with the trial court's conclusion. Because defense counsel at trial cannot be deficient for failing to make a meritless objection, no Sixth Amendment violation occurred.

AFFIRMED.

JAY and M.K. THOMAS, JJ., concur.

_____

Dane K. Chase of Chase Law Florida, P.A., St. Petersburg, for Appellant.

Pamela Jo Bondi, Attorney General, R. Quentin Humphrey, Assistant Attorney General, Tallahassee, for Appellee.